STATE of Missouri, Appellant,

v.

Dallas W. COX, Respondent.

No. WD 71631.

Missouri Court of Appeals,
Western District.

Nov. 2, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2010.

Application for Transfer Denied
Jan. 25, 2011.

Terrence M. Messonnier, Esq., Jefferson City, MO, for appellant.

Eric E. Vernon, Esq., and Gharles K. Balwin, Esq., Liberty, MO, for respondent.

Before: MARK D. PFEIFFER, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

The State of Missouri appeals the circuit court's dismissal of an information charging Respondent Dallas Cox with murder in the second degree, based on the State's pre-trial destruction of evidence which may have had exculpatory value. We reverse the circuit court's dismissal of the information and remand for further proceedings.

### Factual Background[1]

On October 6, 2008, Stephen Akin, a resident of St. Joseph, was assaulted. The next day Akin informed the St. Joseph Police Department that the perpetrators were his uncle, Kenneth Akin, and Dallas Cox, a friend of his uncle. Akin stated that Cox had kicked him in the head. On October 8, Stephen Akin was hospitalized for injuries related to the assault.

On October 9, law enforcement officers interviewed and took a statement from Cox. At that time, the officers took possession of the pair of shoes Cox claimed to have been wearing at the time of the assault; the shoes were booked into evidence on October 10.

Akin died on October 13. Following an autopsy the medical examiner concluded that he had died as a result of blunt force trauma to his head. Nail scrapings, head and pubic hair samples, and a DNA sample were collected during Akin's autopsy.

Cox was initially charged with assault in the second degree on October 10, 2008. On November 24, Kenneth Akin pleaded guilty to voluntary manslaughter in connection with Akin's death. Kenneth Akin stated during the plea proceedings, and apparently in other statements, that he had assaulted Akin alone. Nevertheless, on December 19 the State filed a First Amended Felony Complaint charging Cox with felony murder in the second degree, alleging that Cox, "with the purpose of causing serious physical injury to Steven Akin caused the death of Steven Akin by striking him and kicking him in the head." The complaint was superseded by an information making the same allegations on December 29. Cox pleaded not guilty, and the case was set for a jury trial to commence on September 29, 2009.

On August 19, 2009, Cox requested an opportunity to view the physical evidence

---

1. Our recitation of facts concerning the underlying charges against Cox is solely for purposes of providing necessary background to frame the legal issues presented in this appeal. The description of underlying facts in this opinion should have no effect on any future trial.

and to review any reports on trace evidence. In response to Cox's request, law enforcement officers discovered that Cox's shoes, the evidence collected during Akin's autopsy, the medical report, and a compact disk containing photographs of Cox's hands and of Akin in the hospital had all been destroyed on March 25, 2009. Based on the evidence log sheets, it appears that the evidence was destroyed by Detective Lynn Garland, who was working in the Police Department's evidence room at the time, but was not involved in the investigation of Akin's murder. The log sheets indicate that the evidence was destroyed as the result of a guilty plea (presumably, Kenneth Akin's guilty plea).

On September 22, 2009, Cox filed a motion to dismiss the charges against him or in the alternative for sanctions.

After receiving a response to the motion to dismiss from the State and conducting an evidentiary hearing,[2] the trial court entered its Judgment Sustaining Motion to Dismiss on October 16, 2009. The court's Judgment states:

> The case before the court herein presents the unique situation in which the officer who destroyed the evidence had no direct knowledge of the relative value of the evidence. The officers who were aware of the "potential" value, those who collected and booked the evidence, were not a party to the destruction. As stated emphatically by Detective Byron Weed[, one of the detectives who investigated Akin's murder], when questioned as to whether he would have directed or authorized the destruction of the evidence, "No; this is a homicide case!"

Although the court found that Detective Garland, the officer who actually destroyed the evidence, had no knowledge of its potentially exculpatory value, the court concluded that "[t]he knowledge of the entire department should be imputed to all officers," because "[t]o hold otherwise would be to lead to the assignment of officers to destroy evidence in cases in which they had no other investigatory responsibility."

The Judgment also concludes that the investigating officers knew that the destroyed evidence had exculpatory value, and that this knowledge must be attributed to Detective Garland:

> [T]he only logical inference is that the police were aware of the exculpatory value of the evidence. While they had seized the Defendant's shoes at the time of his arrest, and had collected nail scrapings, head and pubic hair samples and a DNA sample card of the victim at the autopsy, none of these items had been sent off to be tested. Why else were they collected and initially retained? ... Given the investigating officers' interest in collecting the Defendant's shoes, and the [other destroyed evidence], this Court is constrained to find that then-Detective Lynn Garland had knowledge of the exculpatory value of the evidence at the time it was destroyed.

The State appeals.

## Analysis

The State argues that the circuit court erred in dismissing the information against Cox, because the police lacked knowledge of the exculpatory value of the evidence and did not act in bad faith in destroying it. We agree.

We review a circuit court's ruling on a motion to dismiss a charging instrument for an abuse of discretion. *State v. Berwald,* 186 S.W.3d 349, 366 (Mo.App.

2. Detective Garland did not testify at the evi-    dentiary hearing.

W.D.2005) (citing *State v. Burns*, 112 S.W.3d 451, 454 (Mo.App. W.D.2003)).

■ The Judgment dismissed the charges against Cox based solely on a purported violation of the Due Process Clause contained in the Fourteenth Amendment to the United States Constitution. Cox's due process claim implicates " 'what might loosely be called the area of constitutionally guaranteed access to evidence." *Arizona v. Youngblood*, 488 U.S. 51, 55, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (citation omitted). The standards governing such claims depends on the nature of the evidence the State has destroyed.

> [W]hen the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. In *Youngblood*, by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57, 109 S.Ct. 333. We concluded that the failure to preserve this "potentially useful evidence" does not violate due process *"unless a criminal defendant can show bad faith on the part of the police." Id.*, at 58, 109 S.Ct. 333 (emphasis added).

*Illinois v. Fisher*, 540 U.S. 544, 547–48, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (other citations omitted).

■ For evidence to qualify as "materially exculpatory," "the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available

means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). If the evidence fails to meet this two-pronged test, then the evidence is, at most, only "potentially useful," and a showing of bad faith is necessary to substantiate a due process claim based on the State's destruction of the evidence. *Fisher*, 540 U.S. at 548, 124 S.Ct. 1200.

In light of the United States Supreme Court's decision in *Youngblood*, the evidence at issue in this case cannot be considered "materially exculpatory." *Youngblood* was a prosecution for child molestation, sexual assault, and kidnapping. 488 U.S. at 53, 109 S.Ct. 333. After the assault, the authorities collected biological samples from the ten-year-old victim's mouth and rectum, and also collected the victim's underwear and T-shirt, which were later found to contain semen stains. *Id.* By the time of the defendant's trial, the biological samples had degraded due to lack of refrigeration, and could not be tested using then-available technology. *Id.* at 54, 109 S.Ct. 333.

Although the evidence at issue in *Youngblood* would presumably have identified the actual perpetrator of the sexual assault, the Supreme Court held that the exculpatory value of the biological material was not "apparent" at the time it was destroyed within the meaning of *Trombetta*, because it was unknown what testing of the evidence would reveal.

> In this case, the Arizona Court of Appeals [held] ... that " 'when identity is an issue at trial and the police permit destruction of evidence that *could eliminate* a defendant as the perpetrator, such loss is material to the defense and is a denial of due process.' " Th[is] reasoning ... mark[s] a sharp departure from *Trombetta* in two respects. First, *Trombetta* speaks of evidence whose ex-

culpatory value is "apparent." 467 U.S. at 489, 104 S.Ct. 2528. The possibility that the semen samples could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta.* Second, we made clear in *Trombetta* that the exculpatory value of the evidence must be apparent *"before* the evidence was destroyed." *Ibid.* (emphasis added). Here, respondent has not shown that the police knew the semen samples would have exculpated him when they failed to perform certain tests or to refrigerate the boy's clothing; this evidence was simply an avenue of investigation that might have led in any number of directions.

488 U.S. at 56 n. *, 109 S.Ct. 333. *Youngblood* recognized that "the good or bad faith of the State [is] irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Id.* at 57, 109 S.Ct. 333. The Court nevertheless held that a showing of bad faith was required in the case before it, because it was dealing "with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.*

Missouri courts following *Youngblood* have recognized that a showing of bad faith by the State is necessary where it can only be said that destroyed evidence *might* have exculpated a defendant. *See also, e.g., State v. Ferguson,* 20 S.W.3d 485, 504 (Mo. banc 2000) (destruction of surveillance videotape made on night of victim's abduction); *State v. McElvain,* 228 S.W.3d 592, 598 (Mo.App. W.D.2007) (officers failed to preserve material believed to be anhydrous ammonia, which defendant was accused of stealing); *State v. Berwald,* 186 S.W.3d 349, 366–67 (Mo.App. W.D.2005) (failure to preserve audiotape of child victim's initial recounting of sexual abuse allegations to victim's mother); *State v. Smith,* 157 S.W.3d 687, 691 (Mo.App. W.D. 2004) (police failed to preserve chemicals found in alleged methamphetamine laboratory); *State v. Burns,* 112 S.W.3d 451, 454–55 (Mo.App. W.D.2003) (failure to preserve physical evidence from victim and from crime scene, and clothing defendant wore on night of sexual assault).[3]

Under *Youngblood,* the evidence destroyed in this case cannot be deemed "materially exculpatory." As in *Youngblood,* "no more can be said" of the shoes "than that [they] could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57, 109 S.Ct. 333.[4] Given the shoes' destruction, it cannot be known whether they contained trace evidence which would have

---

**3.** Cox asks us to follow the decisions of courts in other States which have adopted the approach advocated by Justice Stevens in a concurring opinion in *Youngblood,* which argued that "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." 488 U.S. at 61, 109 S.Ct. 333. Whatever its merits, however, we are precluded from adopting this approach by the Missouri Supreme Court's opinion in *Ferguson,* which states unambiguously that, "[a]bsent a showing of bad faith on the part of the police or prosecutor, the failure to preserve even potentially useful evidence does not constitute a denial of due process." 20 S.W.3d at 504. We also note that the approach Justice Stevens proposed in *Youngblood* may also have been rejected, at least as a matter of *federal* law, by the passage in *Fisher* which we quote below.

**4.** Although the evidence which was destroyed in this case includes other items in addition to Cox's shoes, Cox's arguments focus on the potential exculpatory value of the shoes, and we do likewise.

inculpated Cox, or whether testing of the shoes would have revealed no such evidence and assisted in his defense of the second-degree murder charge. Significantly, the evidence destroyed in this case has *less* potential probative value than in *Youngblood*. In *Youngblood* it appears that the identity of the perpetrator of the sexual assault could be conclusively determined by testing the biological materials which police had allowed to become degraded and untestable.[5] Here, by contrast, *even if* the shoes had been tested and revealed no trace evidence connecting them to the assault on Akin, this would not necessarily have eliminated Cox as a perpetrator of the assault: Cox may have been wearing different shoes at the time of the assault; Cox may have kicked Akin in the head without any detectable trace evidence having been deposited on the shoes; Cox may have cleaned the shoes between the time of the assault and when they were collected by police; or Cox may have been involved in the assault along with Kenneth Akin, without actually being the one who *kicked* Akin.

We recognize that the shoes that were destroyed here would have been of central significance in Cox's trial if they had been preserved, whether they tended to implicate or absolve him of the crime. However, *Fisher* holds that the potential importance of the evidence to the prosecution's case, or to the presentation of a vigorous defense, is not a relevant consideration:

We ... disagree that *Youngblood* does not apply whenever the contested evidence provides a defendant's "only hope for exoneration" and is " 'essential to and determinative of the outcome of the case.' " In *Youngblood,* the Arizona Court of Appeals said that the destroyed evidence "could [have] eliminate[d] the defendant as the perpetrator." 488 U.S. at 54, 109 S.Ct. 333 (quotation marks and citations omitted).... [T]he applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between "material exculpatory" evidence and "potentially useful" evidence. 488 U.S. at 57–58, 109 S.Ct. 333. As we have held, the substance destroyed here was, at best, "potentially useful" evidence, and therefore *Youngblood*'s bad-faith requirement applies.

540 U.S. at 548–49, 124 S.Ct. 1200 (other citations omitted).[6]

■ Because the evidence at issue here is only *potentially* exculpatory, Cox was required to show that the evidence was destroyed by the police in bad faith. "In this context, bad faith is the destruction of evidence by a state actor 'for the purpose of depriving the defendant of exculpatory evidence.' " *Berwald*, 186 S.W.3d at 366–67 (quoting *State v. Armentrout*, 8 S.W.3d 99, 110 (Mo. banc 1999)); *McElvain*, 228

---

**5.** Notably, Youngblood was exonerated twelve years later, based on more sophisticated DNA testing of the evidence at issue in the Supreme Court's decision. Barbara Whitaker, *DNA Frees Inmate Years after Justices Rejected Plea*, N.Y. Times (Aug. 11, 2000).

**6.** The trial court's Judgment concludes that the investigating officers were aware of the exculpatory value of the destroyed evidence because that evidence was collected, but then not tested. We do not believe these circumstances can support an inference that the

destroyed evidence was "materially exculpatory," however. While the police's collection of certain evidence may indicate an awareness that the evidence is *potentially* exculpatory, law enforcement's decision to collect particular evidence is equally consistent with a belief that the evidence will prove to be *inculpatory*. Similarly, the failure to test the evidence supports, at best, an inference that the police were aware of the evidence's *potentially* exculpatory value.

S.W.3d at 598; *see also Trombetta,* 467 U.S. at 488, 104 S.Ct. 2528 (in finding an absence of bad faith, noting that "[t]he record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence").

We believe the Judgment forecloses any finding of bad faith under the standards we must apply. In its Judgment, the circuit court found that the officers who were actually aware of the potential significance of the destroyed evidence "were not a party to the destruction," and would not have authorized its destruction. Conversely, the court found that the officer who destroyed the evidence "had no direct knowledge of the relative value of the evidence." Given these findings, no conclusion that the police acted in bad faith is possible: in order to act with "the purpose of depriving the defendant of exculpatory evidence," the individuals destroying that evidence must, at a minimum, have some knowledge that evidence is important to a pending criminal prosecution.

We recognize that the trial court imputed the investigating officers' knowledge of the significance of the destroyed evidence to Detective Garland, the officer who destroyed it. But such imputation cannot establish bad faith in this case. The act of destruction by an officer with no purpose to deprive Cox of potentially exculpatory evidence, and the knowledge of the evidence's significance held by other officers who possessed no intent or desire to have the evidence destroyed, cannot be combined to supply the missing ingredient: official animus towards Cox or a purpose to deprive him of the evidence.[7]

Cox argues that there are numerous circumstances in this case that could support a finding of bad faith. Detective Garland's destruction of the evidence was apparently contrary to the unwritten policy of the St. Joseph Police Department, which was to destroy evidence only in response to a court order, and not to destroy evidence in homicide cases.[8] Detective Garland may also have acted contrary to the instructions he had received from the officer in charge of the evidence room, to focus only on cases older than Akin's 2008 homicide. Further, unresolved questions exist as to *why* Detective Garland chose to destroy the evidence, apparently based on Kenneth Akin's guilty plea, when the evidence log sheets did not name Kenneth Akin, but identified only Cox as being associated with the evidence.

While these circumstances arguably *could have* supported a finding of bad faith, the trial court failed to cite to these circumstances in its decision, and as we have explained above, any conclusion that Detective Garland acted in bad faith is foreclosed by the trial court's explicit finding that he acted without knowledge of the

---

7. The circuit court expressed concern that the police could insulate the destruction of evidence from due process review by intentionally having evidence destroyed by officers ignorant of the evidence's significance. But we believe such a situation can be addressed under existing law. Law enforcement officers involved in a criminal investigation who ask an unknowing colleague to destroy potentially useful evidence, in order to deprive the defendant of access to that evidence, have acted in bad faith, whether they destroy the evidence directly or through an agent. That is not the situation here.

8. In this connection, *see* § 542.301, RSMo Cum.Supp.2009 (statute governing disposition of unclaimed seized property); *State ex rel. Nixon v. Russell,* 45 S.W.3d 487, 500–01 (Mo. App. W.D.2001) (affirming trial court's conclusion that sheriff's disposition of unclaimed seized property in violation of § 542.301 "constitutes a willful neglect of his duty as sheriff," supporting sheriff's ouster from office, although sheriff testified that he was unaware of the statute's requirements).

evidence's significance, and its finding that the officers with relevant knowledge were uninvolved in the destruction of the evidence, and would not have authorized it.

### Conclusion

We reverse the trial court's dismissal of the charges against Cox and remand for further proceedings consistent with this opinion.[9]

All concur.

9. We emphasize that we have addressed in this appeal only the trial court's decision to dismiss the charges based on due process access-to-evidence principles. The trial court on remand is free to consider other legal arguments concerning the State's destruction of the evidence at issue, and the appropriate remedy under any other legal theory.