# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 18, 2012 Session

## BRENDA W. SNEYD, CLERK and MASTER AND PROBATE CLERK FOR THE CHANCERY COURT AND PROBATE COURT OF WASHINGTON COUNTY, TENNESSEE, v. WASHINGTON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Washington County**
**No. 40557     Hon. Walter C. Kurtz, Senior Judge**

**No. E2011-01964-COA-R3-CV-JUNE 28, 2012**

Plaintiff, Clerk and Master of Chancery Court, brought this action for an increase in compensation based on Tenn. Code. Ann. §8-24-102(j), which authorizes the County to increase the compensation for a clerk if the clerk is the clerk of two courts.  Defendant County gave the Circuit Court Clerk a 10% increase in compensation pursuant to the statute, but denied the Clerk and Master a 10% increase in her compensation under the statute.  The Trial Court held that the County did not abuse its discretion in denying the Clerk and Master the statutory increase in compensation.  On appeal, we affirm.

 **Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Arthur M. Fowler, Johnson City, Tennessee, for the appellant, Brenda W. Sneyd.

K. Erickson Herrin, Johnson City, Tennessee, for the appellee, Washington County, Tennessee.

# OPINION

On September 22, 2010, Clerk and Master Brenda W. Sneyd, filed a complaint seeking an increase in compensation for her duties as Clerk of two courts. The complaint states that Tenn. Code Ann. § 8-24-102 (h) requires that she must be paid the same salary as the Clerk of Circuit Court and that Tenn. Code Ann. § 8-24-102 (j) provides that a clerk who serves more than one court in a county may receive additional compensation in the amount of 10% of the clerk's compensation. The complaint goes on to state that Tenn. Code Ann. § 8-24-109 provides that a clerk and master who also serves as clerk of a probate court is permitted to receive additional compensation.

The complaint alleges that Washington County pays the Clerk of the Circuit Court her base salary plus 10% of the base salary for a total of $81,253.00 pursuant to Tenn. Code Ann. § 8-24-102 (j)(2), while plaintiff has not received an additional 10% of her base salary as the statute permits. She claims that she is "being treated despairingly" by Washington County as the County Commission has refused to pay her the same salary as the Circuit Court Clerk is paid. She averred that the Washington County Commission's actions "violate the separation of powers between the legislative powers granted to the Commission and the judicial powers granted to the court system pursuant to Articles II and IV of the Constitution of Tennessee, and violated the inherent powers of the Chancery Court and Probate Court for Washington County, Tennessee." She requested the Chancery Court to set her salary to be commensurate with the salary of the Circuit Court Clerk and that the Court grant her a judgment against Washington County in a sum equal to the difference between her past salary and that of the Circuit Court Clerk

On May 25, 2011, Washington County filed a "Motion to Dismiss/Judgment on the Pleadings or, Alternatively, Summary Judgment". Plaintiff then filed a "Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment."

A hearing on the dispositive motions was held on August 16, and the Trial Judge, entered an order granting Washington County's motion for summary judgment and denying Ms. Sneyd's motion for judgment on the pleadings and motion for summary judgment.

The Trial Court, in its Memorandum and Order, stated that at a status conference "counsel . . . agreed that the case involved only legal issues and that the case could be resolved by cross-dispositive motions." The Trial Court rejected Ms. Sneyd's contention that defendant was mandated by Tenn. Code Ann. § 8-24-102 (j)(2) to grant her a 10% pay increase if it granted such an increase to the Circuit Court Clerk finding that "[t]here is nothing in the statute cited above that mandates that both Clerks in the same county must receive the same salary." The Court also rejected plaintiff's unlawful delegation of state

legislative power argument finding that if the "delegation of power to the County to grant a ten percent (10%) raise was illegal, that would only mean that the Circuit Court Clerk's increased salary was improper, not that the Clerk and Master also gets a raise." The Court cited *Faust v. Metro. Gov't of Nashville,* 206 S.W.3d 475, 495- 496 (Tenn. Ct. App. 2006).

The Trial Court also rejected Ms. Sneyd's allegation of an equal protection violation finding that the defendant had a rational basis for not granting plaintiff the 10 % pay raise that she sought. The Trial Court further held that the violation of the inherent powers of the Chancery Court argument was without merit stating that "[t]he court only uses its inherent powers to insure the effective operation of the court system . . ." and that "all indications are that the Clerk and Master's office . . . is operated efficiently and consistent with high standards."

The Court then denied Ms. Sneyd's motion for judgment on the pleadings and granted Washington County's motion for summary judgment. Ms. Sneyd filed a timely notice of appeal.

A statement of Ms. Sneyd's statement of undisputed facts is: Ms. Sneyd has been the Clerk and Master of the Chancery Court for Washington County, Tennessee since 2004. The Clerk and Master was created as a constitutional office in the judicial branch of the Tennessee government pursuant to Article VI, §13 of the Constitution of the State of Tennessee. Clerk and Masters are appointed by Chancellors in all of the counties of Tennessee. In 2005, the exclusive jurisdiction and powers with respect to the probate of Wills and the administration of estates was transferred from the jurisdiction of the Washington County Clerk and General Sessions Court to the jurisdiction of the Washington County Clerk and Master and Chancery Court in the First Judicial District of Tennessee, and there was established the Washington County Probate Court Clerk's office. In 2005, in addition to serving as Clerk and Master of Chancery Court, Ms. Sneyd was appointed Clerk of Probate Court. As Chancery Court Clerk, Ms. Sneyd exercised all of the duties and powers conferred upon clerks of courts generally, a role which is almost exclusively clerical, and statutory law and orders of the Court define the powers exercised. *See* Title 18 of the Tennessee Code Annotated. As Master in Chancery, Ms. Sneyd is a judicial officer with many of the powers of a Chancellor and may be called upon to report her opinions to the Court on questions of law, equity and disputed facts. As Clerk of Probate Court, Ms. Sneyd has the authority to take proof, apply the law and rule on all probate matters except estates probated in solemn form and Will contests. She presides over the probate of Wills in common form and the complete administration of estates. She provided lengthy descriptions of specific duties she performed in her capacity of Clerk and Master and Probate Court Clerk

in her complaint. [1]  When Ms. Sneyd discovered that Washington County had given the Circuit Court Clerk, who also functions as clerk to two courts, a 10% raise over and above plaintiff's salary, she asked the county for the same compensation.  According to Ms. Sneyd, she was told by several individuals, including the county attorney and the former mayor, that the County would give her the requested raise if she would remit the fees she collects as a special commissioner to the county.  Washington County disputed the foregoing statement based on alleged non-compliance with Tenn. R. Civ. P. 56.06. Defendant stated that it could not respond to this statement without conducting a discovery deposition and stated that the allegation regarding the statement of county attorney was not material as the attorney was not the decision maker regarding a requested raise in salary.

The Trial Court ordered Ms. Sneyd to respond to the admission requests and she admitted that she derived a personal income of $142,561,99 from her work as a Special Commissioner from 2006 - 2010.  She also admitted that she does on occasion perform Special Commission duties for which she collects personal income during the hours when the Clerk and Master's office is open for business.

Washington County set forth a statement of undisputed facts in support of its motion for summary judgment, which is summarized as follows:  There are ten Washington County employees under the supervision of the Clerk and Master/Probate Clerk.  The current budget for the Clerk and Master and Probate offices is $719,010.00 and there is one Chancellor in Tennessee's First Judicial District. There are twenty-seven full time and three part-time Washington County employees, as well as five night clerks, under the supervision of the Circuit Court Clerk.  The current budget for which the Circuit Court Clerk has responsibility is $2,010,413.00. There are two Circuit Court Judges and two Criminal Court Judges in Tennessee's First Judicial District and there are two General Sessions Court Judges authorized to serve in Washington County.  In the fiscal year 2009 - 2010, there were 1,635 criminal cases, 1067 civil cases and 19,391 general sessions cases filed in the offices of the Circuit Court Clerk of Washington County.  During the same time, there were 1,246 cases filed in the Chancery and Probate Courts of Washington County.  From fiscal year 2006 - 07 through fiscal year 2009 - 2010, Ms. Sneyd derived $142,561.00 in personal income by way of being appointed special commissioner in cases filed in either the Chancery or Probate Courts.  From fiscal year 2006 - 07 through fiscal year 2009 - 10, the Circuit Court Clerk remitted $12,400.00 to Washington County as a clerk's fee following her sale of real estate

---

[1]A Clerk and Master of a Chancery Court may also be appointed by the Chancellor to serve as a Special Commissioner.  When a Clerk and Master functions as a Special Commissioner she is not compensated by the County for the work.  Rather, the litigants who use the services of a Special Commissioner are charged a fee that the Special Commissioner is statutorily permitted to retain. *See* Tenn. Code Ann. § 8 -22-101.

by court order. Ms. Sneyd did not file a response to Washington County's statement of undisputed facts as required by Tenn. Code Civ. P. 56. 03.

The issues presented on appeal are:

A.      Whether the Trial Court's interpretation of Tenn. Code Ann. § 8-24-102 was error?

B.      Whether the Trial Court erred when it held that appellant was not treated disparately when she was not paid additional compensation for serving more than one court when the circuit court clerk was paid additional compensation for serving more than one court?

C.      Whether the Trial Court erred when it held that Washington county did not violate Tennessee's constitutional mandate of equal treatment?

D.      Whether the Trial Court erred in determining that illegal and improper demands and actions by the appellee on the judicial department did not violate the inherent powers of the court?

E.      Whether the Trial Court erred in granting a dispositive motion when there were disputed material factual issues?

F.      Whether the Trial Court erred in denying appellant's application to allow her to compensate counsel from fees collected by her office?

Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P.56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The court reviews a summary judgment motion *de novo* as a question of law without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.*, 970 S.W. 2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W. 2d 423, 426 (Tenn. 1997). The evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party. *Byrd*, 847 S.W. 2d at 210-211. If both the facts and conclusions to be drawn from them permit a reasonable person to reach only one conclusion, summary judgment is appropriate. *Robinson*, 952 S. W. 2d at 426. In this case, the trial court's final judgment states that the parties agreed that "the case involved only legal issues . . . ."

The first issue raised on appeal involves the interpretation of Tenn. Code Ann.§ 8-24-102(h) and (j)(2). Statutory construction is a question of law that is reviewed *de novo*

without any presumption of correctness. *In re Estate of Tanner,* 295 S.W.3d 610, 613 (Tenn. 2009). When courts interpret statute, well-defined rules are employed. The primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002). We presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.,* 202 S.W.3d 99, 102 (Tenn. 2006). Only in the event that a statute is ambiguous may we reference the broader statutory scheme, such as the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool,* 974 S.W.2d 677, 679 (Tenn. 1998).

Tenn. Code Ann. § 8-24-102 provides the amount of compensation to be received by the various county officers or general officers including clerks and masters of chancery courts, clerks of probate courts, clerks of circuit courts and clerks of general sessions courts. Tenn. Code Ann. § 8-24-102 (h) provides:

> All general officers of the county shall be paid the same salary with the exception of any education incentive payments made to certified public administrators under § 5-1-310 and any payments made to the assessor of property under § 67-1-508.

Tenn. Code Ann. § 8-24-102 (j)(2) provides that a clerk of court may receive an increase in the base salary set by section 102(a)(2) under the following circumstances:

> Notwithstanding the provisions of subsection (h) to the contrary, a county legislative body may provide to a clerk of court who serves more than one (1) court in the county additional compensation in the amount of ten percent (10%) of the clerk's base compensation. The increase shall be for the purpose of compensating the clerk for the additional duties and time required to serve multiple courts. For the purposes of this section, a clerk and master shall be considered eligible for this additional compensation, if the clerk serves as clerk of the court that exercises probate jurisdiction. In order for the increase to be valid, it must be adopted by resolution of the county legislative body. For the purpose of subsection (g), any additional compensation provided to a general officer under any provision of this section shall be included when determining the salary paid to the general officers of the county.

In this case, Ms. Sneyd served as the Clerk and Master of the Chancery Court as well as Clerk of the Probate Court. The Clerk of the Circuit Court for Washington County also

served as Clerk of the General Sessions Court. Thus, both Ms. Sneyd and the Circuit Court Clerk were eligible for a 10 % increase in the base salary provided in Section 102(a)(2) based on their status as clerks of more than one court. Starting in fiscal year 2006 - 2007, Washington County increased the Circuit Court Clerk's base salary by 10 % based on her serving more than one court pursuant to the Code. Ms. Sneyd contends that the Washington County Commission does not have authority under the statute to grant one clerk who serves two court a 10% raise but not provide a similar raise to another clerk who also serves two courts.

Tenn. Code Ann. § 8-24-102 (h) provides that "all general officers of the county [including clerks of court] shall be paid the same salary", and Ms. Sneyd's point that she and the Circuit Court Clerk must be paid the same salary is correct. However, Tenn. Code Ann. § 8-24-102 (j)(2) provides an exception to the general rule provided by section 102(h). The language of section 102 (j)(2) makes it clear that the General Assembly intended to provide an exception to section 102 (h) as it starts off stating: [n]otwithstanding the provisions of subsection (h) to the contrary. (Emphasis added). This language can only be construed to mean that section 102 (j)(2) was meant to provide an exception to the mandate for equal pay contained in section 102 (h) under certain circumstances. Section 102 (j)(2) goes on to provide that application of the exception to section 102 (h) is within the discretion of the county legislative body as it states that " a county legislative body may provide to a clerk of court who serves more than one (1) court in the county additional compensation in the amount of ten percent (10%) of the clerk's base compensation." (Emphasis added). The term "may" is "permissive and operates to confer a discretion." *Huey v. King*, 415 S. W. 2d 136, 139 (Tenn. 1967). *Also see, Sanford Realty Co. v. City of Knoxville*, 172 Tenn. 125, 110 S.W.2d 325 (1937).

The language of Section 102 (j)(2) is unambiguous. It clearly means that the County Commission has the discretion to give a clerk who serves more than one court a 10% raise in salary above the statutorily provided base salary. The Trial Court did not err when it found that Tenn. Code Ann. § 8-24-102 (h) and (j)(2) do not require that the Washington County Commission must provide Ms. Sneyd with a 10% raise above her base salary when it provided such a raise to the Circuit Court Clerk.

Appellant next argues that Washington County's refusal to provide her with the same 10% raise in salary that it provided the Circuit Court Clerk violates the equal protection provisions of the 14th Amendment to the Constitution of the United States, and she raises the issue that it also violates the equal protection guaranteed by the Tennessee Constitution.

The Tennessee Supreme Court, in *Brown v. Campbell County Bd. of Educ.*, 915 S.W.2d 407 (Tenn. 1995) discussed the equal protection of the law guarantees contained in

both the United States and Tennessee Constitutions:

> The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." In two separate provisions, applicable in different circumstances, our state Constitution provides an equal protection guarantee. *State v. Tester,* 879 S.W.2d 823, 827 (Tenn.1994); *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d 139, 152 (Tenn.1993). The first provision found in Article 1, Section 8, known as the "law of the land" clause, provides that individuals shall not be deprived of liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of ... life, liberty or property but by the judgment of ... peers or the law of the land.

> Tenn. Const. Art. I, § 8. The second relevant Tennessee constitutional provision, Article XI, Section 8, reads in part: General laws only to be passed.—The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

> We have consistently held that these two provisions confer the same protections as does the Fourteenth Amendment to the United States Constitution. *State v. Tester,* 879 S.W.2d at 827; *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d at 152. Thus, in analyzing equal protection challenges, we have followed the analytical framework developed by the United States Supreme Court, which, depending on the nature of the right asserted, applies one of three standards of scrutiny: (1) strict scrutiny, (2) heightened scrutiny, and (3) reduced scrutiny, applying the rational basis test. *State v. Tester,* 879 S.W.2d at 828; *Tennessee Small School Sys. v. McWherter,* 851 S.W.2d at 153.

*Brown* at 412 - 413.

Equal protection analysis requires strict scrutiny of a legislative classification only when the classification interferes with the exercise of a "fundamental right" (e.g., right to vote, right of privacy), or operates to the peculiar disadvantage of a "suspect class" (e.g., alienage or race). *State v. Tester*, 879 S.W.2d 823, 828 (Tenn. 1994). Ms. Sneyd does not fit into a suspect class nor a quasi-suspect class and the issue here does not involve a "fundamental right". Thus, the rational basis test is appropriate to analyze Ms. Sneyd's equal protection challenge that she was treated unfairly by the Washington County Commission

when it denied her request for a salary increase.  We hold the Trial Court was not in error when it applied the rational basis for the County to treat the Circuit Court Clerk differently than Ms. Sneyd.  The undisputed evidence shows the contrasting duties between the two clerks' offices.

The Trial Court also considered Ms. Sneyd's personal income that she derived from acting as a special commissioner in cases that originated in the Chancery Court, and she further conceded that she performed some of those duties during office hours.

We agree that based on the uncontested facts presented, the scope of the duties and responsibility associated with the Circuit Court Clerk position is far greater than those associated with the Clerk and Master position.  Accordingly, the County had a rational basis for increasing the Circuit Court Clerk's salary pursuant to the Code, and not increasing Ms. Sneyd's salary.

Next, Ms. Sneyd argues that the Washington County's actions violate the inherent powers of the court?

Ms. Sneyd contends that Washington County's "conduct in attempting to force the Clerk and Master to pay fees earned by her for performing her duties as Special Commissioner that are statutorily exempt from being paid to it is an improper check on the Judicial Department."  As noted, the only evidence in the record regarding Washington County's alleged attempt to force Ms. Sneyd to remit her personal income that she receives for her work as a Special Commissioner is inadmissible hearsay consisting of statements allegedly made by a third party.  As such, the statements relied on by appellant in her affidavit do not satisfy Rule 56.06 for summary judgment purposes. *See Davis v. McGuigan*, 325 S.W.3d at 168 and *Green v. Green*, 293 S.W.3d at 513.  This issue is without merit.

Ms. Sneyd contends that the Trial Court erred in granting summary judgment in favor of appellee because there were genuine issues of material fact precluding summary judgment.  As we have previously noted, the Trial Court's Order states: "[a] status conference was held with counsel wherein it was agreed that the case involved only legal issues and that the case could be resolved by cross-dispositive motions."  This issue was not raised in the Court below, and we will not entertain it on appeal for the first time.

At the outset of litigation, Ms. Sneyd filed a motion to allow her to employ and compensate counsel.  She stated in the motion that she filed this suit "for fair compensation pursuant to Tenn. Code Ann. § 8-24-101 *et seq.* and to preserve the ability of her office to properly serve the citizens of Washington County."  Ms. Sneyd represents that she filed this suit in her official capacity and she had a right to be represented at public expense pursuant

-9-

to Tenn. Code Ann. § 8 -22-108 and the unreported case of *Dobson v. Carter* Tenn. Ct. App. Dec. 19, 1980. Tenn. Code Ann. § 8-22-108 (a)(1)(A) provides:

> At the end of each month, each officer enumerated in § 8-22-101 shall pay, out of the fees, commissions, or emoluments collected by the officer by virtue of the office, all the expenses of the office in the manner provided. The officer shall also pay the salaries of the deputies and assistants who may be provided for the office for each month, and may pay to the officer the proportionate part of the officer's annual salary; but the excess of such fees, commissions, emoluments, etc., the officer shall retain to be accounted for to the county as directed.

This statute applies to the Clerk and Master of a Chancery Court and Clerk of a Probate Court under § 8-22-101. Thus, if the attorney's fees charged Ms. Sneyd in connection with this litigation are deemed an "expense of the office" of the Clerk and Master of Chancery Court and Clerk of Probate Court offices, those fees could be paid out of the fees collected by those offices. Ms. Sneyd relies on *Dobson v. Carter* to argue that the attorney's fees should be paid "out of the office" as she filed the suit in her official capacity.

In *Dobson,* a school superintendent was awarded attorney's fees after a successful legal challenge of actions taken by the school board and, in a second suit initiated by the school board, successfully defending the constitutionality of the statute upon which the first ruling was based. In affirming the award, the Court of Appeals emphasized that the superintendent should be represented at public expense if he was sued or being sued in his official capacity. The court concluded that to hold otherwise "would have a chilling effect upon the disposition of a superintendent to require a school board to follow the mandates of the Legislature, and would ... permit the board to violate state statutes with impunity." *Fannon v. City of LaFollette,* 329 S.W.3d 418, 433 (Tenn. 2010)(citing *Dobson v. Carter*, slip opinion at 3 - 4*).* Thus, Ms. Sneyd contends that the Court of Appeals in *Dobson* created an exception to the American Rule regarding the recovery of attorney's fees. However, the Tennessee Supreme Court, in *Fannon*, noted that "no Tennessee court has since adopted *Dobson* as an exception to the well-established American Rule." *Fannon* at 433.

The Trial Court rejected Ms. Sneyd's contention that her attorney fees should be paid out of the Clerk and Master's budget. The Trial Court relied on *Hudson v. Town of Hollow Rock, Tenn.*, C.A. 2, 1990 WL 60658 (Tenn. Ct. App. May 11, 1990) in which the mayor of Hollow Rock defended a lawsuit brought by citizens related to certain rights of elected officials under the city charter. The mayor later sought to recover his attorney's fees. The mayor was not successful based upon the Court of Appeals reasoning:

> The . . . general rule that, in order to bind the municipal corporation to pay for legal

services, it must appear that such services were rendered in a matter in which the corporation was interested. 10 McQuillin, The Law of Municipal Corporations (3 ed. Revised) § 29.14, p. 312.

A municipality may indemnify its officials only where the expenses are incurred in the performance of official duties or in defense of actions challenging official acts. The fact that the public official seeking indemnification is involved in the suit is not dispositive of the issue, rather it is the subject matter of the underlying suit that determines whether the public must bear the burden of the expense. 4 McQuillin, The Law of Municipal Corporations (3 ed. Revised) § 12.199 (1989 Cum.Supp.).

*Hudson* at * 3.

We affirm the Trial Court's decision to deny Ms. Sneyd's request for recovery of attorney's fees. This case was filed by Ms. Sneyd for her sold benefit and did not benefit the office of the Clerk and Master, or to defend her actions in her official capacity.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Brenda W. Sneyd.

 

 

_____
HERSCHEL PICKENS FRANKS, P.J.