

# Missouri Court of Appeals
## Southern District
### Division Two

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD33854
)
LAMAR ANTHONY McVAY, ) Filed October 31, 2016
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF PEMISCOT COUNTY

Honorable Fred W. Copeland

<u>AFFIRMED</u>

A jury found Lamar Anthony McVay ("Defendant") guilty of robbery in the first degree, *see* section 569.020, RSMo 2000, and the trial court sentenced him to thirty years' imprisonment in the Department of Corrections. Defendant appeals his conviction and argues that the trial court erred by: (1) "overruling defense counsel's objections to State's Exhibits 8 and 9, video and still picture from the Arkansas robbery, along with testimony from the Arkansas convenience store clerk and the Blytheville police officer about the robbery[;]" (2) "denying [Defendant's] motion to suppress identification and in failing to exclude the in-court identification of [Defendant] by Lisa Greathouse, because the identifications were tainted by an

impermissibly suggestive procedure[;]" (3) "overruling defense counsel's objections to testimony from Officer Randy Trimm that he recognized [Defendant] on the surveillance tapes . . . in that there was no showing that Trimm had any expertise that would render him more qualified than the jurors who viewed the tape to make an identification[;]" and (4) "overruling defense counsel's motion to dismiss because the state failed to disclose the surveillance video from the First Street Apartments[.]"  Finding no merit in Defendant's points, we affirm his conviction.

## Factual Background

Defendant does not challenge the sufficiency of the evidence to support his conviction. Briefly, the facts viewed in the light most favorable to the verdict, **State v. Hopper**, 326 S.W.3d 143, 146 (Mo.App. 2010), are that Lisa Greathouse was working as a cashier at Flash Market, a convenience store, in Steele, Missouri, on July 1, 2013, when a black man with a scar on his face and clothed all in black came into the store, pulled out a gun, and demanded the money from the cash register.  Greathouse recognized the robber as a regular customer but did not know his name.  She later identified Defendant as the robber through a photo lineup.

The jury found Defendant guilty, and the trial court sentenced him as a prior and persistent offender to thirty years' imprisonment.  This appeal timely followed.

## Discussion

### Point One—Admission of Evidence of Defendant's Presence in an Arkansas Convenience Store Earlier in the Day

Defendant's first point relied on states:

> The trial court abused its discretion in overruling defense counsel's objections to State's Exhibits 8 and 9, video and still picture from the Arkansas robbery, along with testimony from the Arkansas convenience store clerk and the Blytheville police officer about the robbery, because this evidence violated [Defendant's] rights to due process, a fair trial, and to be tried only for the offense charged, guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United

2

States Constitution and Article I, Sections 10, 17 and 18(a) of the Missouri Constitution, in that, despite the trial court's attempt to limit the testimony and evidence to an "incident" rather than calling it a "robbery," the evidence was clearly of another similar crime, but one which was not sufficiently unusual or distinctive to fall under the identity exception to the inadmissibility of evidence of other misconduct, prejudicing [Defendant], since such "bad acts" evidence would raise a legally spurious presumption of guilt in the minds of the jurors.

"[A] trial court's ruling regarding the admissibility of evidence . . . is reviewed for abuse of discretion. The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011) (internal citations and quotations omitted). The trial court's ruling will be upheld if it is sustainable under any theory. *State v. Mort*, 321 S.W.3d 471, 483 (Mo.App. 2010).

At trial, Defendant challenged his identity as the perpetrator of the robbery of the Flash Market in Steele, Missouri. In attempting to prove his identity as the robber, the State offered video, photographic, and testimonial evidence that 22 hours before the Flash Market was robbed and 16 miles away from the Flash Market, Defendant was in the Dodge Store in Blytheville, Arkansas, wearing the same shorts and shoes as the Flash Market robber was wearing, as described by the Flash Market clerk, Lisa Greathouse, and as shown in the video of that robbery.

Shalonda Pope was the cashier at the Dodge Store and testified that an "incident" occurred on July 1, 2013.[1] During her testimony, Exhibits 8 and 9 were admitted over

---

[1] Specifically, Pope's testimony was:

> [Prosecutor:] Did you work [at the Dodge Store] back in July of 2013?
> [Pope:] Yes.
> [Prosecutor:] Specifically July 1st, of 2013?
> [Pope:] Yes.
> [Prosecutor:] Now were you working about one o'clock that morning on July 1st?
> [Pope:] Yes.
> [Prosecutor:] Was there an incident that occurred at the store, about one o'clock in the morning on that day?
> [Pope:] Yes.

3

Defendant's objections.  Exhibit 8 contained surveillance video of the store, some portion of which was played for the jury, and Exhibit 9 was a still frame of a moment in time taken from a video on Exhibit 8 showing an individual entering the store.

Detective Vanessa Stewart of the Blytheville Police Department testified that she spoke with Defendant about the incident, and he told her that he was the individual in the video on Exhibit 8.[2]  Following Detective Stewart's testimony, the trial court advised the jury that

> the testimony from Ms. Pope and Ms. Stewart is only to be considered by the jury for purposes of the identification of the defendant concerning the charge that he's on trial for today.  And that's the sole purpose it is to be used in the jury's deliberation, since I.D. is an issue in this case.

The State mentioned the Dodge Store video twice during closing argument.  First, the State noted that "you also heard about, it was later discovered that the defendant was spotted in Blytheville, Arkansas, at the Dodge Store. Same shoes, same shorts."  The State later argued:

> And not only do we have those witnesses, we have the same shoes, we have the same shorts as you see right here that he wore at Blytheville, which I remind you, was twenty hours, just twenty hours prior to the Steele robbery.  Wearing the same shoes, the same shorts, earlier in the day, same shoes, same shorts.  Right here, same shoes, same shorts.

---

> [Prosecutor:]  All right, did you, well, let me just ask you this.  Did the store have surveillance at the time of the incident?
> [Pope:]  Yes, sir.

[2] Specifically, Detective Stewart's testimony was:

> [Prosecutor:]  All right.  Now did you investigate an incident down in Blytheville, Arkansas at the Dodge Store on July 1st, of 2013?
> [Detective Stewart:]  Yes.
> [Prosecutor:]  All right, did you review surveillance video of, of that incident?
> [Detective Stewart:]  Yes, sir.
> [Prosecutor:]  All right, is this, this is surveillance video you reviewed as part of your investigation?
> [Detective Stewart:]  Yes, sir.
> ***
> [Prosecutor:]  Now, did you speak to him about this incident in this video in particular?
> [Detective Stewart:]  Yes, sir.
> ***
> [Prosecutor:]  What did he tell you about this video?
> [Detective Stewart:]  He said that that was him in the video.

4

Defendant's point contends that the trial court abused its discretion in admitting Exhibits 8 and 9, the testimony of Pope, and the testimony of Detective Stewart because "the evidence was clearly of another similar crime," and "such 'bad acts' evidence would raise a legally spurious presumption of guilt in the minds of the jurors."

The testimony of Pope and Detective Stewart does not, however, attribute any crime or bad act to Defendant. Similarly, Exhibit 9 is a still photo that shows Defendant entering the Dodge Store. It does not depict Defendant engaging in a crime or a bad act. Exhibit 8 contains the only challenged evidence that shows Defendant engaging in a crime or bad act; however, Defendant does not contend that the portion of the Exhibit 8 video depicting the bad act was ever shown to the jury.

In order for evidence to be inadmissible as a prior bad act, it must in fact show a prior bad act. *See e.g.*, *State v. Franklin*, 307 S.W.3d 205, 208 (Mo.App. 2010) (a victim's single reference to a "prior incident" – the nature of which was never revealed – did not constitute evidence of a crime); *State v. Rodgers*, 3 S.W.3d 818, 823 (Mo.App. 1999) (testimony concerning defendant's mug shot did not connect the defendant with a specific crime); *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989) ("In the present case, the witness[es]' vague references cannot be characterized as clear evidence associating appellant with other crimes.").

Defendant's counsel on appeal argued at oral argument that "the evidence [of a prior crime] is . . . the implication that a robbery occurred on the same date."[3] We cannot credit this speculation when nothing in the record suggests that the jury understood the evidence to implicate the defendant in a robbery. *State v. Depriest*, 822 S.W.2d 488, 492 (Mo.App. 1991), *overruled on other grounds by State v. Carson*, 941 S.W.2d 518 (Mo. banc 1997) (testimony and

---

[3] Defendant's counsel on appeal is not the same attorney who represented him during his trial.

still photograph concerning the defendant being monitored on Sears surveillance video was not evidence of other crimes because nothing in the record "would cause a jury to infer that only people guilty of crimes are monitored by a Sears surveillance camera.").

Because the jury was not shown a prior bad act, Defendant's first point alleging that the jury was shown a prior bad act by implication is denied.

### *Point Two—Defendant's Identification by Greathouse*

Defendant's second point relied on states:

> The trial court erred in denying [Defendant's] motion to suppress identification and in failing to exclude the in-court identification of [Defendant] by Lisa Greathouse, because the identifications were tainted by an impermissibly suggestive procedure, which violated [Defendant's] right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that a very substantial likelihood of irreparable misidentification existed, since in the lineup photos, [Defendant] was the only person in an orange jumpsuit, the only person with a scar on his face, the only person in hair braids and the only person whose name did not begin with the letter "A." Furthermore, the officer asked Greathouse if she "could possibly identify the person that committed the robbery in the lineup" and sometime after the lineup, an officer told Greathouse that they "got the guy who robbed her," which would have confirmed any misidentification, causing her to continue her error at trial.

Before trial, Defendant moved to suppress the out-of-court and future in-court identifications of Defendant by Greathouse, alleging that the pretrial photo lineup procedure was impermissibly suggestive.

"A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous. This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citations omitted). We review the whole record, consider the totality of the circumstances, and affirm if the trial court's ruling is supported by substantial evidence. *State v. Trimble*, 654 S.W.2d 245,

6

254 (Mo.App. 1983). The whole record includes the evidence presented at both the suppression hearing and at trial. *State v. Gaw*, 285 S.W.3d 318, 319 (Mo. banc 2009). Under that standard, the facts presented concerning Defendant's motion to suppress were as follows.

Greathouse told police that, while working at the Flash Market, she was robbed by someone who often came into the store "two to three times per day." She described the robber as a "black male with a scar on his face" and described the robber's car as a "medium-size, blue car." The next day, police asked Greathouse to participate in a photo lineup, and Greathouse identified Defendant. In the photos, Defendant is the only person pictured in what appears to be an orange jail uniform (although every photo depicts height lines behind the respective subject), is the only person pictured with a scar on his face, is the only person pictured in braids, is the only person pictured from Steele, Missouri, and Defendant's last name is conspicuously placed among the other names on the Photo Identification Form as the only one that does not begin with the letter "A." At the time of the lineup, Steele Police asked Ms. Greathouse if she could possibly identify the person who committed the robbery in the lineup. Some time after the photo lineup, police told Ms. Greathouse that they got the guy who robbed her.

Greathouse did not see the names before she made the identification and did not pay any attention to them. She also paid no attention to the "orange shirt" Defendant was shown wearing in the photo. She understood the height indicators in each photo to mean that those persons in the photos had "all been in trouble and had their pictures taken." She was "a hundred percent certain that [she] got the right guy" and identified Defendant again in the courtroom.

The trial court found that "the procedures used by police were fair and not impermissibly suggestive and the witness had sufficient recollection independent of police procedures to provide a reliable identification" and overruled Defendant's motion.

7

[T]he crucial test for the admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witness. Identification testimony will be excluded only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification.

*State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989) (internal citations omitted). "While there are factors which may have operated to cloud identification, within the parameter of impermissible suggestiveness, the extent to which the perception and memory of a witness is influenced by outside sources is a question for the trier of fact." *Id.* at 94.

Under the circumstances here, there was substantial evidence from which the trial court could conclude that the procedure used was not impermissibly suggestive. The individuals in the photo lineup shown to Greathouse are all of a similar complexion and stature. *See State v. Cosby*, 976 S.W.2d 464, 468–69 (Mo.App. 1998) ("[A] lineup is not impermissibly suggestive simply because the individuals in the lineup have different physical characteristics. A reasonable effort to find physically similar participants is all that is required. Differences in weight, age, height, hairstyle and other physical characteristics do not necessitate a finding of impermissible suggestiveness."). The officer's request to "identify the person that committed the robbery" is also not out of the ordinary. *Cosby*, 976 S.W.2d at 469 ("It is only natural that a victim of a crime asked to view a lineup would believe that it contains a suspect."). More importantly, Defendant was a regular customer of the Flash Market with whom Greathouse was familiar (even though she did not know his name), Greathouse was not influenced by the listed names or his clothing, and she remained confident in her identification through trial.

Under the totality of these circumstances, the trial court's determination that the photo lineup was not impermissibly suggestive is supported by substantial evidence. Because the procedure used was not impermissibly suggestive, we do not consider what impact the procedure

may have had upon the reliability of the identification made by Greathouse. Defendant's second point is denied.

### Point Three—Officer Trimm's Identification of Defendant in the Flash Market Video During His Investigation of the Robbery

Defendant's third point relied on states:

> The trial court abused its discretion in overruling defense counsel's objections to testimony from Officer Randy Trimm that he recognized [Defendant] on the surveillance tapes, because the ruling denied [Defendant] his due process right to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that there was no showing that Trimm had any expertise that would render him more qualified than the jurors who viewed the tape to make an identification. The testimony was irrelevant, prejudicial, and invaded the province of the jury.

As stated above, "a trial court's ruling regarding the admissibility of evidence . . . is reviewed for abuse of discretion. The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Winfrey*, 337 S.W.3d at 5 (internal citations and quotations omitted). The trial court's ruling will be upheld if it is sustainable under any theory. *Mort*, 321 S.W.3d at 483.

Officer John Randall Trimm, a captain and assistant police chief of the Steele Police Department, testified that, as part of the investigation of the Flash Market robbery, he reviewed surveillance footage from the store and recognized Defendant. Defendant objected that Officer Trimm's testimony was improper lay witness testimony. The trial court overruled that objection and Officer Trimm's testimony continued:

[Prosecutor]. I'm gonna ask you that again. Can you recognize the suspect in that video?

[Officer Trimm]. Yes, sir I can.

[Prosecutor]. As whom?

[Officer Trimm]. Lamar McVay.

9

[Prosecutor].  As who?

[Officer Trimm].  The defendant.

[Prosecutor].  Now, did you know where Mr. McVay lived?

[Officer Trimm].  I was familiar with where Mr. McVay's father lived and I was familiar with the fact that he as [sic] staying.

[Prosecutor].  Now, during the course of your investigation, did you in fact go to his father's house where he in fact was staying?

[Officer Trimm].  That's correct.

[Prosecutor].  Walk me through that?

[Officer Trimm].  We would have went to apartment number 22, North First Street Apartments.  We talked to the father, his name is Terry Hollywood.  Mr. Hollywood gave us consent to search the home.  He signed a consent to search form.  He escorted, first, we did a quick through of the apartment to ensure that Mr., Mr. McVay wasn't in the house, and, Terry Hollywood took us back to the room that Mr. McVay lived in, and, just inside the door to the right was a pair of shoes.  They would have been a pair of shoes, that in my opinion matched the description of the shoes in the video.

In *State v. Cummings*, a detective testified that he was aware of a potential suspect to a crime so he obtained a photo of that suspect to show to the witness who identified the defendant in the photograph and this lead to an arrest warrant being issued for the defendant.  400 S.W.3d 495, 502-03 (Mo.App. 2013).  The officer identified the photograph, which had previously been admitted into evidence as "the photograph that [he] obtained that [he] believed was of Robert Cummings[.]"  *Id.* at 503; 508.  The defendant argued on appeal that the testimony was inadmissible because it was based on the officer's opinion and the jury was just as capable as the officer to evaluate whether or not the defendant was pictured in the photograph.  *Id.* at 507.  This court concluded that the officer's testimony "was not offered as opinion testimony or to prove the truth of the matter asserted—that the individual in the photograph was [the defendant].  Rather, the testimony was elicited to explain [the officer's] subsequent conduct[]" in obtaining an arrest warrant.  *Id.* at 507.  Therefore, this court held that because "'[i]t is well established that

10

. . . testimony is admissible to explain the officers' conduct, supplying relevant background and continuity to the action[,]'" the trial court did not abuse its discretion in admitting the officer's testimony. *Id.* at 507-08 (quoting *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981)).

Similarly, when viewed in context, Officer Trimm's identification of Defendant was not offered as opinion testimony that Defendant was in fact depicted in the video but rather was offered as Officer Trimm's personal observation during the course of his investigation that informed, directed, and dictated his subsequent conduct in the investigation. Without Officer Trimm's testimony that he recognized Defendant on the video, the jury might have been left speculating as to why Officer Trimm investigated the residence where the shoes were found.

Because Officer Trimm's testimony was not offered as opinion testimony, but rather to explain his subsequent conduct in the investigation, the trial court did not err in overruling Defendant's objection. Defendant's third point is denied.

### Point Four—First Street Apartments Video

Defendant's final point relied on states:

> The trial court abused its discretion in overruling defense counsel's motion to dismiss because the state failed to disclose the surveillance video from the First Street Apartments in violation of [Defendant's] rights to due process, a fair trial, to present a defense and to confront and cross-examine the witnesses against him guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that the police looked at the surveillance video while investigating whether [Defendant's] car was at the apartments, but failed to maintain it in order that other cars could be investigated. [Defendant] was prejudiced because this potentially exculpatory material was not maintained, leading to the conclusion that the police were only looking for evidence inculpating [Defendant] rather than investigating the case as a whole.

11

Defendant filed a motion to dismiss, alleging a ***Brady***[4] violation concerning video footage of an apartment complex, and his motion was denied. We review the denial of his motion for an abuse of discretion. ***State v. Rodgers***, 396 S.W.3d 398, 400 (Mo.App. 2013).

The officer who viewed the footage of the apartment complex, Steele Police Department's Chief of Police Billy Joe Stanfield, testified that the footage was "grainy," taken at night, and "you could basically just see headlights, and, you know, an image. You couldn't make out the vehicles going in and out." The time stamp on the video was also incorrect, and Chief Stanfield was not sure that he would ever have been able to determine an accurate time reading. Because of this, Chief Stanfield did not "obtain" the video. According to Chief Stanfield, the video would not have been beneficial to Defendant, or anyone for that matter, to show that Defendant's vehicle did or did not arrive at the apartment at a certain time.

"[D]ue process is violated when the prosecutor suppresses evidence that is favorable to the defendant and material to either guilt or punishment. Evidence is material only when there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense." ***State v. Salter***, 250 S.W.3d 705, 714 (Mo. banc 2008).

Defendant has not shown that the video is material. "For evidence to qualify as 'materially exculpatory,' 'the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" ***State v. Cox***, 328 S.W.3d 358, 362 (Mo.App. 2010) (quoting ***California v. Trombetta***, 467 U.S. 479, 489, 104 S.Ct. 2528,

---

[4] ***Brady v. Maryland***, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

81 L.Ed.2d 413 (1984)). Defendant produced no credible evidence supporting his position that the video tape was apparently exculpatory before it was destroyed. The only evidence in this case is that the video would not have been material to guilt or punishment. The trial court, therefore, did not abuse its discretion in denying Defendant's motion. Defendant's fourth point is denied.

## Decision

Defendant's conviction is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – concurs

WILLIAM W. FRANCIS, JR., J. – concurs

13