**STATE of Missouri, Respondent,**

v.

**Travis Allen BUSH, Appellant.**

**No. WD 73738.**

Missouri Court of Appeals,
Western District.

April 24, 2012.

Application for Transfer to Supreme Court
Denied May 29, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Erika R. Eliason, Assistant Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and KAREN KING MITCHELL and GARY D. WITT, Judges.

MARK D. PFEIFFER, Presiding Judge.

Travis Allen Bush ("Bush") appeals the judgment of his conviction, following a jury trial in the Circuit Court of Boone County, Missouri ("trial court"), of the class C felony of stealing, § 570.030,[1] for which Bush was sentenced by the trial court to eight years' imprisonment as a prior and persistent offender, § 558.016. Bush asserts two claims on appeal. First, Bush asserts that the trial court abused its discretion in overruling his motion to suppress the victim's out-of-court identification and in admitting over objection her in-court identification of him. He contends that the identification procedure was so suggestive that it created a substantial risk of misidentification, causing the victim's identification to be rendered unreliable. Second, Bush asserts that the trial court erred in refusing Bush's proffered jury instruction on the reliability of eyewitness testimony. We affirm.

---

1. All statutory references are to the Revised Statutes of Missouri, Cumulative Supplement 2009, the statute in effect at the time the offense was committed on June 16, 2010. *State v. Nash,* 339 S.W.3d 500, 508 (Mo. banc 2011).

## Facts and Procedural History[2]

In the early morning hours of June 16, 2010, Mary Powers ("Powers") was walking home alone after spending the evening out with friends. During her walk, she was approached by a black male wearing a red shirt and dark pants with "braids" or "corn-rows" for his hairstyle. The two "exchanged cigarettes and lighters." He asked her if she had a boyfriend, for her phone number, and where she lived. She refused to give him any information and walked away. A short time later, she felt that someone was coming up behind her. She heard a voice say, "Hey, girl, do you have any money?" She recognized the voice, turned and looked at the person, and recognized him as the person she had given a cigarette to. She responded, "I'm sorry; I'm broke." She started walking faster toward her home. She felt someone grab her shoulder and "rip the purse off of [her] shoulder." She started running but turned around and saw the same person she had been speaking with earlier holding her purse, the contents of which included a pink Motorola Razr cell phone with red nail polish on the back. Powers ran to her home and used her boyfriend's phone to call 911, giving the operator a description of her assailant.

Officer Kevin Kasper received a dispatch at 2:25 a.m. on June 16, 2010, informing him that a larceny was in progress—a female's purse had been stolen. He arrived at Powers's home at 2:29 a.m. She again provided a description of the person who stole her purse. Officer Kasper dispatched the description over the police radio system to other officers in the area who were searching for the assailant.

At 2:40 a.m., Officer Jill Wieneke detained a person matching the assailant's description. When Officer Kasper was advised of the detention, he asked Powers if she would be willing to go with him in his patrol car to the area where the person was being detained. She agreed to go. On the way, Officer Kasper explained that she was to view the person being detained to determine if he was the person that stole her purse, but that she was not to identify him unless she was 100 percent certain of his identity. Powers was in the back seat of Officer Kasper's vehicle when they arrived at the scene. Officer Kasper shined his patrol spotlight on the person being detained so Powers could see him and so the person could not see her. Powers stated that she was 100 percent certain that the man was the person who stole her purse. Officer Kasper then alerted the other officers that Powers had made a positive identification.

Officer Wieneke arrested Bush at 2:49 a.m. The officers performed a search incident to arrest and discovered, among other items, a pink Motorola Razr cell phone with red nail polish on the back in Bush's back pocket. Officer Wieneke approached Officer Kasper's patrol car and asked Powers if the cell phone belonged to her. Powers identified it as her phone.

Bush was charged with felony stealing as a prior and persistent offender. Bush moved to suppress Powers's out-of-court identification of him and any in-court identification. A suppression hearing was held, at which Officers Kasper and Wieneke testified. The trial court took the motion under advisement. At trial, Bush objected to Powers's testimony regarding her out-of-court identification of him, based on his motion to suppress. The trial court overruled the motion but granted

---

**2.** "We view the facts in the light most favorable to the verdict." *State v. Nelson,* 334 S.W.3d 189, 191 n. 1 (Mo.App. W.D.2011).

Bush a continuing objection. Bush moved for a judgment of acquittal at the close of the State's evidence and at the close of all the evidence, both of which were overruled.

During the instruction conference, Bush's counsel proffered a proposed jury instruction modeled on the eyewitness testimony jury instruction adopted by the Eighth Circuit Court of Appeals. The trial court declined to give the not-in-MAI instruction. The jury returned a guilty verdict. The trial court overruled Bush's motion for a new trial. The trial court entered judgment on the jury's verdict and sentenced Bush to eight years' incarceration in the Department of Corrections.

Bush appeals.

## Point I: Overruling Motion to Suppress Out–of–Court Identification and Admitting In–Court Identification

### Standard of Review

■ "In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Nelson*, 334 S.W.3d 189, 193 (Mo. App. W.D.2011). The facts and inferences therefrom are reviewed in the light most favorable to the trial court's ruling, and all contrary inferences are disregarded. *Id.* The trial court's decision to admit or exclude evidence will not be disturbed unless there has been an abuse of discretion. *Id.* "We defer to the trial court's superior opportunity to judge the credibility of the witnesses at the suppression motion hearing." *Id.*

### Analysis

Prior to trial, Bush filed a motion to suppress the out-of-court and any in-court identifications of Bush by Powers. The trial court took the motion with the case. In his first point on appeal, Bush asserts that the trial court erred in denying his motion to suppress Powers's out-of-court identification and in admitting, over objection, Powers's in-court identification of Bush as the person who stole her purse. He claims that the identifications violated his due process rights because: (i) the identification was the result of an unnecessarily suggestive police procedure, which created a substantial risk of misidentification; and (ii) the identifications were unreliable.

■ Where pretrial identifications are challenged, we engage in a two-step analysis. *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979) (*overruled on other grounds by Kuyper v. Stone Cnty. Comm'n*, 838 S.W.2d 436, 438–39 (Mo. banc 1992)). We must first determine whether the procedures employed by the police during those identifications were impermissibly suggestive. *Id.* If they were, then we consider whether those suggestive procedures created a "very substantial likelihood of an irreparable misidentification at trial." *Id.* " 'Reliability, not suggestiveness, determines the admissibility of identification testimony.' " *Nelson*, 334 S.W.3d at 193 (quoting *State v. Robinson*, 849 S.W.2d 693, 696 (Mo.App. E.D.1993)). "[Bush] must establish the first prong of the test, that the pre-trial procedures were impermissibly suggestive, before a review of the reliability of the identification is even necessary or appropriate." *Id.*

Bush argues that the one-person in-police-custody identification was impermissibly suggestive because Officer Kasper told Powers that a person matching the description she provided to police was in custody, Powers was taken to a location only a few blocks from the purse-snatching incident, Bush was the only person in the

custody of two armed police officers, and Bush had police car headlights and a spotlight shining on him. We disagree.

" 'A pre-trial identification procedure is unduly suggestive if the identification results not from the witness's recollection of first-hand observations, but rather from the procedures or actions employed by the police.' " *Id.* (quoting *State v. Chambers*, 234 S.W.3d 501, 513 (Mo.App.E.D.2007)). Bringing a victim to the scene of the crime or to the scene of the arrest to observe a suspect shortly after the perpetration of the crime[3] is an approved procedure. *Id.* "Only where the witness made the identification as a response to the suggestions or encouragement of the police, rather than on his own observation and visual recollection of the defendant's appearance will this procedure be deemed unduly suggestive." *Id.* at 193–94. "It is not improper for police to inform a victim that they have a suspect that the victim may be able to identify." *Id.*

Examining the totality of the circumstances, *Higgins*, 592 S.W.2d at 159, the record in this case does not establish that the identification was unduly suggestive. On the way to the scene of the suspect identification, Officer Kasper explained to Powers that she was not to identify the person being detained as the person who stole her purse unless she was 100 percent certain of her identification of her assailant. When they arrived at the scene of Bush's detention and Officer Kasper shined his spotlight on Bush, Powers immediately recognized the person as the person who stole her purse, and she so informed Officer Kasper. Powers said the only thing different about Bush was that it looked like he had put a black shirt over the red shirt he had been wearing because she saw red at the bottom of the shirt. Clearly, Powers used her own observation and visual recollection of Bush's appearance to identify Bush. Under these circumstances, the identification was not impermissibly suggestive.[4]

The trial court did not err in denying Bush's motion to suppress. Point I is denied.

## Point II: Refusal of Proffered Jury Instruction

### Standard of Review

The trial court has discretion to submit or refuse a proffered jury instruction. *State v. Durham*, 299 S.W.3d 316, 321 (Mo.App. W.D.2009). Our review is limited to determining whether the trial court abused its discretion. *Id.*

### Analysis

In his second point on appeal, Bush asserts that the trial court erred in refus-

---

3.  " '[T]he shorter the length of time between the crime and the confrontation, the greater the reliability of the identification because the details are fresh in the witness's mind.' " *Nelson*, 334 S.W.3d at 194 (quoting *State v. Overstreet*, 694 S.W.2d 491, 495 (Mo.App. E.D.1985)).

4.  Even were we to conclude that the identification was impermissibly suggestive and proceed to the second prong of the pretrial identification analysis—the reliability test per *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979)—we would additionally conclude that Powers's identification of Bush was reli-

able, in that: (1) Powers observed Bush on three separate instances in her brief encounter with Bush (sharing cigarettes and a lighter, Bush's inquiry for money, and Bush fleeing from Powers after snatching her purse); (2) Powers was attentive enough to recall Bush's clothing, clothing color, skin color, and hair style; (3) Powers's description of Bush was accurate; (4) Powers exhibited no uncertainty whatsoever upon seeing Bush while he was in police custody; and (5) Powers's identification of Bush was made less than twenty-five minutes after the purse-snatching incident occurred.

ing his proffered jury instruction on the reliability of eyewitness testimony. Bush contends that this refusal violated his rights to due process, to present a defense, and to a fair and impartial jury.

■ The proffered instruction was modeled after Eighth Circuit Pattern Instruction 4.08 on eyewitness testimony, which was derived from *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972).[5] Bush contends that his proffered *Telfaire* instruction was needed to prove his theory of defense: that Powers's identification of Bush as the man who stole her purse was unreliable because it was based on impermissibly suggestive procedures used by the police. Bush suggests that the issue of the reliability of identification testimony, addressed by the *Telfaire* instruction, is not covered by the language in Jury In-

struction No. 1 (MAI–CR3d 302.01). The State responds that the trial court properly instructed the jury on the believability of witnesses pursuant to MAI–CR3d 302.01.

Rule 27.02(e)[6] requires a trial court to read to the jury in a felony case MAI–CR3d 302.01 (9–1–08), which includes the following language:

In determining the believability of a witness and the weight to be given to testimony of witnesses, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; and any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all the evi-

**5.** Notably, though *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972), was decided four decades ago, the Missouri Supreme Court has never adopted a jury instruction similar in length, argument, or substance to that of Eighth Circuit Pattern Instruction 4.08; and though Bush would like for this court to create a mandated *Telfaire*-like instruction via judicial construct, that is not our role or function in the courts of the state of Missouri.

Bush refers us to *Perry v. New Hampshire*, —— U.S. ——, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012), and argues that the Supreme Court endorses the use of the *Telfaire* instruction. While the Supreme Court is not *critical* of instructions such as the *Telfaire* instruction in its *Perry* opinion, its use is not *mandated* by the Court; instead, the Supreme Court's reference to instructions like the *Telfaire* instruction is that they are merely one example of "safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability"—other safeguards of which include the defendant's Sixth Amendment right to confront witnesses, the defendant's right to effective assistance of counsel, the constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt, and state and federal rules of evidence

that permit trial judges to exclude relevant evidence if its probative value is substantially outweighed by its prejudicial effect. *Id.* at 728–29.

Here, Bush availed himself of many of these safeguards in his defense at trial, including the requirement of the trial court to provide an instruction to the jury patterned after MAI–CR3d 302.01 (9–1–08). As we identify in our ruling today, Missouri courts have endorsed the use of this instruction on the topic of the credibility and weight to be given to witness testimony and have expressly criticized use of the non-MAI *Telfaire* instruction.

We do note, however, that the Supreme Court's opinion in *Perry* does at least lend credence to Bush's suggestion that our Missouri Supreme Court and the MAI criminal instruction committee should consider revisiting the manner of how juries are instructed on eyewitness testimony, though we stop short of endorsing the text of the lengthy and argumentative *Telfaire* instruction or the Eighth Circuit's Pattern Instruction 4.08.

**6.** All citations to the Rules of Criminal Procedure are to I MISSOURI COURT RULES—State (2011), the rules in effect at the time of Bush's trial on February 10, 2011. *State v. Moriarty*, 914 S.W.2d 416, 421 n. 2 (Mo.App. W.D.1996).

dence in the case; any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

The Note on Use 3 for MAI–CR3d 302.01 (9–1–08) **prohibits** the giving of any other or additional instruction regarding the "believability of witnesses, or the effect, weight or value of their testimony."

The State's case against Bush was primarily based on Powers's eyewitness testimony identifying Bush as the person who stole her purse. Given the felony stealing charge, the trial court was obligated to give MAI–CR3d 302.01 (9–1–08) and properly did so. Bush's counsel proffered a *Telfaire* instruction, which the trial court declined, finding that "this is argument. You can just practically read this verbatim as an argument, closing argument.... [The state courts of Missouri] certainly have a number of instructions that have been approved [by the Missouri Supreme

Court] at our disposal, and [this *Telfaire* instruction] certainly [is not] close to anything that we have."

When one reads the text of the non-MAI *Telfaire* instruction,[7] one can readily see why Missouri courts have previously concluded that "submission of a cautionary instruction such as that in *Telfaire* would violate Rule 28.02(d)[,] which requires that jury instructions be simple, *brief*, impartial, and *free from argument*." *State v. Gilmore*, 797 S.W.2d 802, 810 (Mo.App. W.D.1990) (emphasis added).

Furthermore, " 'Missouri courts have unequivocally rejected the argument that it is error for a trial court to refuse to submit additional cautionary instructions to the jury concerning eyewitnesses modeled after those contained in *Telfaire*, especially where the Missouri Approved Instructions adequately present the defendant's theory of innocence.' " *State v.*

---

7. The text of the non-MAI *Telfaire* instruction proffered by Bush was as follows:

The value of identification testimony depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In evaluating such testimony you should consider all of the factors mentioned in these instructions concerning your assessment of the credibility of any witness, and you should also consider, in particular, whether the witness had an adequate opportunity to observe the person in question at the time of the offense. You may consider, in that regard, such matters as the length of time the witness had to observe the person in question, the prevailing conditions at that time in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times.

You should also consider whether the identification made by the witness after the offense was the product of her own recollection. You may consider, in that regard, the strength of the identification, and the

circumstances under which the identification was made, and the length of time that elapsed between the occurrence of the crime and the next opportunity the witness had to see the defendant.

You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to her for identification, you should scrutinize the identification with great care.

The State has the burden of proving identity beyond a reasonable doubt. It is not essential that the witness be free from doubt as to the correctness of the identification. However you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may find him guilty. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

*Haley,* 73 S.W.3d 746, 752 (Mo.App. W.D.2002) (quoting *Gilmore,* 797 S.W.2d at 809). "Unless the trial court abused its discretion in refusing to give the non-MAI *Telfaire* instruction, we must affirm its ruling." *Id.* As in *Haley,* we conclude that Bush

> failed to make any showing that the mandated MAI[-CR3d] 302.01 instruction did not adequately address his defense theory of witness misidentification. We find no abuse of discretion in the trial court's rejection of the *Telfaire* instruction, as it is strongly disfavored under Missouri law and prohibited without any showing of special application.

*Id.* at 753.

Point II is denied.

### Conclusion

We affirm the trial court's judgment.

KAREN KING MITCHELL and GARY D. WITT, Judges, concur.