

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

          **Respondent,**

v.

**BRADLEY ISE,**

          **Appellant.**

**WD76497**

**OPINION FILED:**

**February 10, 2015**

### Appeal from the Circuit Court of Platte County, Missouri
### The Honorable Abe Shafer IV, Judge

**Before Division One: Thomas H. Newton, P.J., Lisa White Hardwick, Anthony Rex Gabbert, JJ.**

Bradley Ise appeals from a judgment entered upon a jury verdict convicting him of two counts of first-degree property damage, one count of second-degree assault, one count of leaving the scene of a motor vehicle accident, and one count of driving while revoked. He was charged as and found to be a prior and persistent offender. He asserts ten points on appeal. First, he contends that the circuit court erred by overruling his motion for judgment of acquittal because the evidence adduced at trial was legally insufficient to prove guilt beyond a reasonable doubt of any charged offense. Second, Ise contends that the circuit court erred by denying his motion to dismiss because the State suppressed, to his prejudice, the recording of a 911 call to the Missouri State Highway Patrol placed by the State's witness Kenny Searcy. Third, Ise claims that the court erred to his prejudice by denying his motion in limine and admitting in evidence the

recordings of telephone calls to the Platte County Dispatcher. Fourth, Ise contends that the court erred in overruling his objection to the photographic lineup procedure used in this case and the identification of him at trial by Jordan Infranca. Fifth, Ise charges that the court plainly erred by failing to instruct the jury on the issue of eyewitness identification. Sixth, Ise alleges that the court erred by admitting into evidence, to his prejudice, the prior testimony of Sergeant Kelley given at a probation revocation proceeding in the State of Kansas. Seventh, Ise alleges that the court erred by improperly bolstering the credibility of the State's witness, Jordan Infranca. Eighth, Ise contends that the court plainly erred by failing to instruct under Count II on the lesser offense of property damage in the second degree and to instruct under Count III on the lesser included offense of assault in the third degree. Ninth, Ise claims that the court plainly erred by failing to instruct the jury with regard to the definitions of "knowingly," "purposely," and "physical injury." Finally, Ise contends that the court erred by sentencing him to consecutive sentences totaling 20 years imprisonment. We affirm.

In the light most favorable to the verdicts, the evidence at trial was that on July 22, 2010, Michael Payne was driving northbound on I-635 in his red Impala when he observed a black Chrysler 300 driving erratically, weaving in and out of traffic and cutting other cars off. He observed the Chrysler 300 and a white car "jockeying positions," and "engaged in a conflict" as evidenced by hand gestures and motions. Payne observed the cars speed up, slow down, and brake check each other. Payne testified that he did not want to stay beside the Chrysler 300 so he got in front and was attempting to make out the driver in his rear view mirror when he was struck from behind by the Chrysler. He described the driver as a white male with a beard and sunglasses. After being struck, Payne pulled over to the side of the road but the Chrysler did not stop. Payne then got back on the road in an attempt to obtain the license plate number of the

2

Chrysler 300. He also called 911 for help. He testified that just before he reached the I-635/I-29 merge, he saw the black Chrysler 300 on the side of the highway. He then observed the Chrysler cut across four lanes of traffic and merge onto I-29. Payne testified: "As soon as we got to where we could merge into the right-hand lanes, the black car darted out and the next thing I'd seen was tire smoke, brake lights, and he'd already struck the other vehicle." Payne observed the white car in the highway median against a concrete retaining wall.

Payne testified that he received a repair estimate of $8,000 to fix the damage that the black Chrysler 300 caused to his red Impala. In a photographic line-up, Payne accurately identified Ise as the driver of the black Chrysler 300, but at the time of the identification indicated that he was only 10% certain of its accuracy.

Jordan Infranca testified that on July 22, 2010, he was driving northbound on I-635 when he observed a red Impala and a black Chrysler 300 pass him going at a high rate of speed. He testified that the Chrysler 300 appeared to be pursuing the red Impala and that the cars were driving recklessly and erratically. Infranca testified that when the Chrysler passed him, the driver looked over at him and Infranca looked at the driver. He testified that the driver was well-groomed and professional looking, with his hair slicked back and he wore a mustache and goatee. Infranca testified that he then observed the Chrysler get behind the red Impala and "ram" the rear driver's side of the red Impala. Infranca called 911. He testified that he followed the black Chrysler in an attempt to obtain details for the police because the black car appeared to be the "aggressor." Infranca testified that "when the red Impala went northbound on I-29, the black Chrysler crossed all three lanes of traffic, getting into the far left-hand lane and went after the red Impala again over the I-29 northbound overpass." Infranca testified that he then lost sight of the two cars when Infranca got onto I-29 northbound. Soon thereafter, Infranca observed a white

3

Ford Fusion on the highway railing. Infranca provided his contact information to officers who arrived at the scene.

On or about August 5, 2010, Sergeant Kelley of the Missouri Highway Patrol met with Infranca. Infranca testified that Kelley presented a photographic line-up that included six photographs and advised Infranca that the line-up may or may not contain the person involved in the incident Infranca had observed. Kelley left the room. Infranca then identified photo number four as the person he believed to be the driver of the black Chrysler 300. Infranca circled photograph number four and signed his name. When Kelley returned, he observed that Infranca had circled photograph number four and asked Infranca if he would like to see a current photograph of the individual in photograph number four. Infranca indicated that he did and testified that when he saw the current photograph he was 100% sure that that was the person he observed driving the black Chrysler 300 on July 22, 2010. Infranca also identified Ise in the courtroom, on the day of Ise's trial, as the individual he had observed driving the Chrysler 300. Infranca testified that he was unable to identify Ise in a previous hearing, held in July of 2011, because the person that he observed at that hearing was more overweight in the facial area and had more facial hair than he recalled seeing the previous year at the time of the incident.

Skylar Braun, the driver of the white Ford Fusion, testified at Ise's trial. He testified that on July 22, 2010, he was on his way home from work when he "noticed a black car driving crazily, like he was in a hurry to get somewhere." Braun testified that the black car was swerving in and out of traffic. Braun stated that he and the driver of the black car "got into a little road rage. I mouthed off something to him and flipped him off." Braun testified that the driver of the black car did the same back. Braun testified that he observed the black car hit, or rear-end, a "purplish Impala." Braun testified that he observed the black car cut across traffic to

4

chase Braun. He testified that the black car then hit the passenger rear quarter panel of Braun's car causing Braun to spin into the median. Braun testified that the impact caused his car to slide down the median and his bumper and fender fell off and his two rear wheels popped. Braun testified that his vehicle was a 2009 Ford Fusion that he had purchased new for $25,000. He testified that it was worth approximately $24,000 at the time of the collision and had approximately 23,000 miles on it. Braun testified that, after the collision, his car was worth at least $1,000 less than prior to the collision.

Julie Williams also testified at Ise's trial. She testified that in July of 2010 she owned a 2006 black Chrysler 300. She testified that shortly before July 22, 2010, she asked Ise if she could borrow Ise's Cadillac Escalade because she was in the process of moving and she needed a larger vehicle than her own to move her belongings. She testified that they agreed to "swap cars" until she completed her move. Sometime after the swap, she received a telephone call from Sergeant Kelley. She testified that Kelley asked her if she was aware that her car had been involved in two hit and run accidents. She advised Kelley that Bradley Ise had her vehicle.

Greg Hester, President of Performance Auto Body in Armourdale, also testified at Ise's trial. He testified that Ise appeared at Performance Auto Body in July or August of 2010. He testified that Ise brought in a Chrysler 300 that needed grille, header panel, hood, and fender repair. Ise's mother paid a $400 deposit to fix the damage that totaled $1,122.

The jury found Ise guilty under counts one and two of property damage in the first degree, guilty under count three of assault in the second degree, guilty under count four of the class D felony of leaving the scene of a motor vehicle accident, and guilty under count five of driving while revoked. As to count four, the court sustained Ise's post-trial motion by reducing the charge from a felony to a misdemeanor. Ise was sentenced to a total of 20 years with each

5

sentence to run consecutive to one another and to a sentence he had received in Kansas, but concurrent to two other Platte County sentences.  Ise appeals.

## Point I:  Evidentiary Sufficiency

In his first point on appeal, Ise contends that the circuit court erred by overruling his motion for judgment of acquittal because the evidence adduced at trial was legally insufficient to prove guilt beyond a reasonable doubt of any charged offense.  Ise contends that there was no proof that he knowingly caused property damage exceeding $750.00 on counts one and two, acted with the purpose of causing injury to Skyler Braun on count three, or that he was aware that his privilege to drive a motor vehicle had been revoked on count five.

Our review is "'is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.'"  *State v. Jones*, 427 S.W.3d 191, 197 (Mo. banc 2014) (quoting *State v. Moore*, 303 S.W.3d 515, 519 (Mo. banc 2010)).  We accept as true all evidence and reasonable inferences that support the convictions, ignore all evidence and inferences to the contrary, and do not reweigh the evidence.  *Id.*  We view the evidence in the light most favorable to the guilty verdict. *Id.* at 199.  We afford great deference to the jury's verdict and will not act as a "super juror." *Id.* at 198.

First, Ise contends that the evidence was insufficient to prove that he was the driver of the black Chrysler 300 that was involved in the July 22, 2010, crimes.[1]  This claim has no merit. Two separate witnesses identified Ise in photographic line-ups as the driver of the black Chrysler 300, and identified Ise in the courtroom as well.  Further, the evidence reflects that shortly before

_____

[1]For the sake of brevity, we herein address only the elements of each crime that Ise contends lacked sufficient evidence to support conviction.

6

July 22, 2010, Julie Williams loaned her black Chrysler 300 to Ise in exchange for using his vehicle to move with. Williams's car had no damage at the time she loaned the vehicle to Ise. Ise appeared at Performance Auto Body in Armourdale in July or August of 2010 with a damaged black Chrysler 300. Ise's mother placed a $400 deposit toward the repair bill. We find sufficient evidence from which a reasonable juror might have found, beyond a reasonable doubt, that Ise was the driver of the Chrysler 300 that was involved in the charged crimes.

Second, Ise contends that there was insufficient evidence to support in Counts I and II that Ise knowingly caused property damage or that he knowingly caused damage more than $750.00. In Count I, Ise was charged with knowingly damaging Michael Payne's vehicle, the red Impala, by striking the vehicle in the rear while both vehicles were driving on the interstate and causing damage in excess of $750.00. Jordan Infranca, an eyewitness to the collision who described Ise as the "aggressor" who was pursuing the red Impala, testified that he observed Ise "ram" the rear driver's side of the red Impala. Payne testified that he received a repair estimate of $8,000 to fix the damage to his red Impala caused by the black Chrysler 300 striking it.

Pursuant to Section 562.016.3(2), RSMo 2000, a person acts knowingly "[w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Knowledge "is rarely susceptible to direct proof" and "may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the incident." *Schlax v. State*, 419 S.W.3d 906, 910 (Mo. App. 2014) (internal quotations and citations omitted).

We find that any reasonable person would be aware that "ramming" another vehicle while traveling on an interstate highway is practically certain to cause damage to the opposing vehicle. Consequently, we find more than sufficient evidence in the record from which a reasonable juror

7

might have concluded, beyond a reasonable doubt, that Ise knowingly caused damage to Payne's property and that the damage exceeded $750.00.

In Count II, Ise was charged with knowingly damaging the vehicle driven by Skyler Braun by driving into Braun's vehicle while traveling on the interstate and causing damage in excess of $750.00. Braun testified that, while Braun was driving on the interstate he was chased by a black car, the driver of which was later identified as Ise, and Braun's car was stuck in the passenger rear quarter panel by the black car which caused Braun's car to spin into the median. Braun testified that his car slid down the median and his bumper and fender fell off and his two rear wheels popped. Braun testified that his vehicle was a 2009 Ford Fusion that he had purchased new for $25,000. He testified that it was worth approximately $24,000 at the time of the collision and had approximately 23,000 miles on it. Braun testified that, after the collision, his car was worth at least $1,000 less than prior to the collision. Upon review of the record, we find more than sufficient evidence from which a reasonable juror might have concluded, beyond a reasonable doubt, that Ise knowingly caused damage to Braun's property and that the damage exceeded $750.00.

Third, Ise contends that there was insufficient evidence to prove in Count III that he acted with the purpose of causing physical injury to Skyler Braun to warrant conviction for second degree assault. We disagree. Ise was charged in Count III, pursuant to Section 565.060, RSMo Cum. Supp. 2014, with attempting to cause physical injury to Skyler Braun by means of a dangerous instrument by driving his vehicle into Braun's vehicle causing Braun to spin out on the interstate and strike a concrete median wall.

In *State v. Williams*, 126 S.W.3d 377, 384 (Mo. banc 2004), our Supreme Court stated:

8

Missouri courts have repeatedly held that a seemingly innocuous item may constitute a dangerous instrument by considering the circumstances under which the object is used. In these cases, the standard for determining whether an ordinary object constituted a dangerous instrument turned on whether the defendant knowingly used the object in a manner in which it was readily capable of causing death or serious physical injury. . . .

The statutory definition of 'dangerous instrument' in Section 556.061(9), requires only that the defendant knows he is using the instrument under circumstances that are 'readily capable of causing death or serious physical injury' and does not require that the defendant have the subjective intent to use the object with an intent to cause death or serious physical injury.

A motor vehicle qualifies as a dangerous instrument when it is used under circumstances in which the vehicle is readily capable of causing death or serious physical injury. *Id.*

The evidence reflects that, Ise chased Braun with a motor vehicle while traveling at a high rate of speed and struck Braun's vehicle with his own motor vehicle, causing Braun's to spin off of the road and strike a concrete median. Consequently, we find sufficient evidence from which a reasonable juror might have concluded, beyond a reasonable doubt, that, Ise attempted to cause physical injury to Braun when Ise used the motor vehicle he was driving as a dangerous weapon and purposefully propelled it into Braun's car while traveling at a high rate of speed on an interstate highway.

As to Count V, Ise contends that the evidence was insufficient to prove that he had knowledge that his operator's license was revoked to support his conviction for driving while his license was revoked pursuant to Section 302.321, RSMo Cum. Supp. 2005.

Under Section 302.321.1, in effect on the date of the incidents,

[a] person commits the crime of driving while revoked if such person operates a motor vehicle on a highway when such person's license or driving privilege has been cancelled, suspended, or revoked under the laws of this state . . . and acts with criminal negligence with respect to knowledge of the fact that such person's driving privilege has been cancelled, suspended, or revoked.

Previous cases have held that a driving record showing expiration or revocation is sufficient under this statute to prove knowledge or criminal negligence with respect to knowledge. *See State v. Collins*, 413 S.W.3d 689, 697 (Mo. App. 2013), *State v. Hurd*, 877 S.W.2d 644, 645 (Mo. App. 1994), *State v. Brown*, 804 S.W. 2d 396, 398 (Mo. App. 1991), *State v. Huff*, 879 S.W.2d 696, 698 (Mo. App. 1994). Here, the State entered into evidence Exhibit 6, which contains a revocation letter that had been sent to Ise, as well as Ise's driving record showing points assessed sufficient to revoke his license. Although Ise claims that Exhibit 6 "was clearly not sufficient to show that he knew or was aware his license was revoked," he fails to articulate how this was insufficient in light of precedent. Beyond this, although Ise argues that the State submitted no proof that Ise actually received the revocation letter, the jury was entitled to infer otherwise based on the evidence presented. *Huff*, 879 S.W.2d at 698.

We find sufficient evidence to support each of Ise's convictions beyond a reasonable doubt. Point one is denied.

### Point II: Denial of Motion to Dismiss

In Ise's second point on appeal, he contends that the circuit court erred, to his prejudice, by denying his motion to dismiss because the State suppressed the recording of a 911 call to the Missouri State Highway Patrol placed by State's witness Kenny Searcy, who testified by way of a videotaped deposition. Ise contends that the 911 call was a prior recorded statement of a State's witness and exculpatory of Ise and impeaching of the testimony of other State's witnesses, and the recording was destroyed by the State after Ise filed a written discovery request seeking disclosure of that recording pursuant to Rule 25.03.

We review a circuit court's ruling on a motion to dismiss for an abuse of discretion. *State v. Cox*, 328 S.W.3d 358, 361 (Mo. App. 2010). The standards governing claims such as Ise's

10

depend on the nature of the evidence the State allegedly destroyed. *Id.* at 362. Our United States

Supreme Court has stated:

> [W]hen the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. In *Youngblood*, by contrast, we recognized that the Due Process Clause 'requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.' 488 U.S. at 57, 109 S.Ct. 333. We concluded that the failure to preserve this 'potentially useful evidence' does not violate due process '*unless a criminal defendant can show bad faith on the part of the police*.' *Id.*, at 58, 109 S.Ct. 333 (emphasis added).

*Id.* (quoting *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (other citations omitted)). For

evidence to be considered materially exculpatory, it must contain an exculpatory value that was

apparent before the evidence was destroyed, and be of such nature that the defendant would be

unable to obtain comparable evidence through reasonably available means. *Id.* (citing *California*

*v. Trombetta*, 467 U.S. 479, 489 (1984)).

Here, Ise fails to show that the evidence he contends was destroyed was either materially

exculpatory or, in the context of Ise's case, whether it would have even been potentially useful

evidence for Ise's defense. Even if it could be considered potentially useful, Ise fails to show

that it was destroyed in bad faith.

Ise claims that a 911 recording of a telephone call made by eyewitness to the accident,

Kenny Searcy, was exculpatory and impeaching. Searcy's account of what he observed prior to

making the 911 call, however, was entered into evidence via deposition because Searcy was in

Afghanistan at the time of trial. Ise does not claim that the 911 recording would have

contradicted Searcy's testimony, but that the 911 recording would have allowed for more

11

effective cross-examination of Searcy and would have been more credible evidence having been contemporaneous with the crime.

Searcy's deposition testimony was that he was driving on I-29 when he saw a black Chrysler 300 swerve into the side of a light colored car. He then observed the light colored car hit the concrete median and observed debris fly off of the light colored car. He observed the black car continue driving and so he followed the black car to obtain the license number. He was able to obtain a license number but could not identify the race or gender of the driver or how many individuals were inside the vehicle.

Contrary to Ise's claims, there is nothing exculpatory or impeaching about Searcy's inability to identify the driver of the black Chrysler 300. If this were so, then Ise would have been exonerated by Skyler Braun's testimony that he, too, was unable to identify the driver. Further, Searcy's deposition testimony about the incident and his actions in response to the incident represent comparable evidence that was available to Ise at the time of his trial. Ise had the opportunity to cross-examine Searcy in that deposition. There is nothing within that deposition to suggest that Searcy's 911 call to police at the time of the incident differed in any manner from his deposition testimony and he was asked nothing in that deposition regarding whether his recollection at the deposition had been altered by the passage of time. Although Searcy was unable to provide a description of the driver, he was able to provide a license number which, as evidenced by other testimony, was ultimately linked to the black Chrysler 300 that Ise was borrowing from Julie Williams at the time of the incident. Shortly after the incident, Ise took that same car to an auto body shop for repair. Additionally, we find no evidence to support Ise's claims that the 911 call made by Searcy was impeaching of the identification testimony of other State's witnesses.

12

Even if the tape could be considered potentially useful evidence, Ise fails to show that it was destroyed in bad faith. All parties agree that the State attempted to obtain the 911 recordings from the Highway Patrol, but found that they had already been purged from the Highway Patrol system when they made that attempt. Although there was a delay from the time Ise's counsel filed a Request for Discovery pursuant to Rule 25.03 requesting the "written or recorded statements" of "persons the State intends to call as witnesses at any hearing or at the trial," and when the State attempted to obtain the recordings, there is no indication that the State destroyed the 911 tapes for the purpose of depriving Ise of exculpatory evidence. *See Cox*, 328 S.W.3d at 364. Further, Rule 25.03(A)(9) only requires disclosure of "material or information within the possession or control of the State which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment." Although Ise did request recordings of any person the State intended to call as a witness, all evidence in the record suggests that the 911 tape recording would have supported, and not negated, Ise's guilt. We find no abuse of discretion in denying Ise's motion to dismiss. Point two is denied.

### Point III: Admission of 911 Tape

In his third point on appeal, Ise contends that the circuit court erred, to his prejudice, by denying his motion in limine and admitting in evidence over objection the recordings of telephone calls to the Platte County Dispatcher (State's Exhibit 1) because the recordings were testimonial, did not relate to any ongoing emergency, and were made for the purpose of furthering a police investigation of past events.

"The standard of review for the admission of evidence is abuse of discretion." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). The trial court has broad discretion in choosing to

13

admit evidence and we will not disturb this discretion unless it is against the logic of the circumstances and so unreasonable as to show a lack of careful consideration. *State v. Freeman*, 269 S.W.3d 422, 426 (Mo. banc 2008). "For evidentiary error to cause reversal, prejudice must be demonstrated." *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006). "Though we review the trial court's decision to admit evidence for abuse of discretion, '[w]hether a defendant's constitutional rights were violated is a question of law reviewed *de novo*.'" *State v. Williams*, 366 S.W.3d 609, 615 (Mo. App. 2012) (*quoting State v. Nunnery*, 129 S.W.3d 13, 17 (Mo. App. 2004)).

"For a 911 tape to be admissible, it must clear two hurdles." *State v. McKinney*, 336 S.W.3d 499, 502 (Mo. App. 2011). "'First, the statements must survive traditional hearsay analysis.'" *Id.* (*quoting State v. Bynum*, 299 S.W.3d 52, 59 (Mo. App. 2009)). "'Second, because this is a criminal case, the statements must survive Sixth Amendment Confrontation Clause analysis.'" *Id.*

First, we note that while Ise makes bold assertions regarding the 911 tapes such as "the interrogation during the 911 calls produced testimonial statements," and the "callers who spoke with the dispatcher describe an event that has ended; not an ongoing emergency," Ise fails to articulate anything within the 911 tapes that make these assertions accurate. Here, the 911 tapes consist of several short calls to the Platte County Dispatcher. Although not identified by name in the recordings, the first caller appears to be Michael Payne, who testified and was subject to cross-examination at Ise's trial. In his first call to the dispatcher, he stated that he had just been rear-ended by a car that had been "acting a fool with a bunch of people" on I-29 north and that

14

the car took off after rear-ending him. The dispatcher immediately attempted to forward his call to the Highway Patrol, but it appears that the call is then cut off. It appears that at some point he called back and continued waiting to be transferred to the Highway Patrol. As the dispatcher returned to the line to tell him that the Highway Patrol line was still ringing busy, he states: "Uh, Ma'am, he just caused a wreck, he spun out a guy, we're at mile marker 5.2, yea, he got in front of a guy, slammed on his brakes, spun him out." The 911 tapes consist of nothing more from this caller.

The 911 tapes consist of a second caller with a female voice. The caller states that she had just observed a car traveling I-29 northbound that "flipped and hit the side." The caller was asked to contact the Highway Patrol and there is nothing more from this caller.

The 911 tapes consist of a third caller with what appears to be a male voice. The caller states that he is calling regarding an accident on the highway "before you get to exit six." The dispatcher asked about potential injuries and the caller states that he sees two gentlemen standing beside a car "but one car is up on top of the rail." The dispatcher indicated that she was transferring his call and there is nothing more on the tape from this caller.

We find it evident from the content of the 911 tapes that each call meets the present sense impression exception to the hearsay rule. "For a hearsay statement to be admissible pursuant to the present sense impression exception, the statement must be made simultaneously, or almost simultaneously, with the occurrence of an event or act, the statement must describe or explain the event or act; and the declarant must perceive the event with his own senses." *Mckinney*, 336 S.W.3d at 503. The aforementioned 911 calls each meet this exception.

We find that the 911 tapes also survive confrontation clause analysis. The first caller, Payne, testified at trial and was available for cross-examination. Beyond this, all three very brief

15

calls clearly evidence nontestimonial statements made to enable police to meet an ongoing emergency. *See State v. Kemp*, 212 S.W.3d 135, 147-48 (Mo. banc 2007) and *Davis v. Washington*, 547 U.S. 813, 822 (2006) (discussing the Confrontation Clause and testimonial versus nontestimonial statements.) The circuit court did not abuse its discretion in admitting the 911 tapes. Point three is denied.

## Point IV: Photographic Lineup

In Ise's fourth point on appeal, he contends that the circuit court erred, to his prejudice, in overruling his timely objection to the photographic lineup procedure used in this case and the identification of him at trial by Jordan Infranca. Ise contends that the identification procedure used with Infranca was unduly suggestive, the in-court identification was the result of the unduly suggestive procedure used, and Infranca did not have an adequate, independent basis for the in-court identification. We find this claim waived.

While Ise asserts that the court erred in overruling his "timely" objection to the photographic lineup procedure, Ise fails to identify in the record where this timely objection was made. In reviewing the transcript, we find no objection made at trial when Derek Lenger testified as to how he created the photographic lineup that Infranca was presented. There was no objection by defense counsel when Exhibit 8, the lineup created by Lenger, was entered into evidence. There was also no objection when Infranca described the photographic lineup procedure that he experienced, and the defense noted "no objection" at trial to the State admitting Exhibit 9, the photographic lineup that was presented to Infranca, into evidence. Further, there was no objection when Infranca identified Ise in the courtroom as the person that he saw driving the black Chrysler 300 on July 22, 2010.

16

For these reasons, and because Ise failed to file a pre-trial motion to suppress the identification testimony, the State contends that Ise has waived this claim. We agree. "[T]o properly preserve a challenge to identification testimony, a defendant must file a pretrial motion to suppress, object timely at trial, and include the issue in his motion for new trial." *State v. Wendleton*, 936 S.W.2d 120, 123 (Mo. App. 1996). Ise fails to address the State's claims of waiver in his reply brief and "relies on the arguments set forth in his initial brief" with regard to these claims. Ise does not request plain error review and we decline to exercise our discretion to review for plain error. Point four is denied.

## Point V: Jury Instruction

In his fifth point on appeal, Ise contends that the circuit court plainly erred by failing, to his prejudice, to *sua sponte* instruct the jury on the issue of eyewitness identification. He contends that the court has an obligation to instruct the jury on all issues of law relevant to its decision, and court erred in failing to do so because the identification of the driver of the black Chrysler 300 was a crucial issue with regard to each count charged against him. He contends that the descriptions of the driver given by the witnesses varied in significant ways, none of the witnesses consistently and certainly identified Ise as the driver, and the opportunity of each witness to view the driver's face was limited. Ise acknowledges that counsel failed to submit such an instruction and requests plain error review.

Rule 30.20 authorizes this court to review, in its discretion, "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error." *State v. Carl*, 389 S.W.3d 276, 287 (Mo. App. 2013). We first determine whether the claimed

17

error facially establishes substantial grounds for believing there has been a manifest injustice or miscarriage of justice. *Id.* Without such a showing, we should decline to exercise our discretion to conduct a plain error review. *Id.* "If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20." *Id.*

We find that Ise fails to make a threshold showing that plain error review is warranted. Ise suggests that the jury received no instructions regarding eyewitness identification, yet in the last sentence of Ise's argument acknowledges that "[a] point similar to this point has been ruled against Appellant's position in *State v. Bush*, 372 S.W.3d 65 (Mo. App. W.D. 2012)." Here, as in *Bush*, the court instructed the jury regarding witness testimony through MAI-CR 3d 302.01. We noted in *Bush* that "[t]he Note on Use 3 for MAI-CR3d 302.01 (9-1-08) *prohibits* the giving of any other or additional instruction regarding the 'believability of witnesses, or the effect, weight or value of their testimony.'" *Id.* at 71. Nevertheless, Ise argues that the court had a duty, *sua sponte*, to give the jury an additional cautionary instruction. There is no support for this contention and we, therefore, decline to exercise our discretion to conduct a full plain error review. Ise's fifth point is denied.

**Point VI: Admission of Prior Testimony**

In Ise's sixth point on appeal, he contends that the circuit court erred, to his prejudice, by admitting into evidence over objection the prior testimony of Sergeant Kelley given at a probation revocation proceeding in Kansas. On July 15, 2011, Kelley testified at a hearing in Kansas concerning the revocation of Ise's Kansas probation. Sometime after the Kansas revocation hearing, Kelley died of cancer. On February 4, 2013, the court sustained the State's

18

motion to permit Kelley's prior testimony into evidence, absent portions of the testimony to which Ise objected, and the court sustained.[2]

When addressing the admissibility of prior testimony, we consider whether "(1) the prior testimony was given before a judicial tribunal, (2) the witness was sworn and testified, (3) the accused was present and had an opportunity for cross-examination, (4) the parties and issues were substantially the same as in the case on trial, and (5) the witness is no longer available to testify." *State v. Aaron*, 218 S.W.3d 501, 506 (Mo. App. 2007). "Where the initial opportunity to cross-examine a witness is sufficient to provide substantial compliance with the right to meet witnesses 'face to face,' subsequent admission of that testimony at trial offends neither the Missouri Constitution nor its federal counterpart." *Id.* at 507. Ise argues that the parties and issues in the probation violation case were not the same as the parties and issues in the case at bar and there was no reason for appellant's counsel in the probation matter to fully and carefully cross-examine Kelley because, by the time Kelley testified, the State of Kansas had already proven several violations of probation. We find no abuse of discretion.

Although Kelley's testimony was at a probation revocation hearing in the State of Kansas, the purpose of that testimony was to relate his investigation of the events that occurred on July 22, 2010. While Kansas, and not Missouri, was the State party to that hearing, the purpose of that hearing was to determine whether Ise had engaged in behaviors on July 22, 2010, warranting revocation of his probation. Ise had the opportunity to cross-examine Kelley at that hearing. While Ise argues that he had no reason to thoroughly cross-examine Kelley because other evidence warranting probation revocation had already been offered, as his revocation was

---

[2]We note that there is no suggestion that the jury was privy to the fact that Kelley's testimony originated from a probation revocation hearing and find that the admitted evidence consists solely of Kelley's investigation of the July 22, 2010 events and nothing indicative of prior bad acts.

in the "sound discretion of the district court," a vigorous defense of all allegations of probation violations was warranted. *See State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996). In *Black v. Romano*, the United States Supreme Court recognized two distinct stages in probation revocation:

> In identifying the procedural requirements of due process, we have observed that the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation.

471 U.S. 606, 611 (1985). Thus, as a probation violation in and of itself does not necessarily require revocation, and revocation is at the discretion of the sentencing authority, Ise had every reason to fully and carefully cross-examine Kelley to argue that his violation(s) did not warrant revocation. *See also State v. Skolaut*, 286 Kan. 219, 182 P.3d 1231 (2008). We find no abuse discretion in the circuit court's admission into evidence of Kelley's prior testimony. Point six is denied.

## Point VII: Bolstering

In his seventh point on appeal, Ise contends that the circuit court erred, to his prejudice, by improperly bolstering the credibility of State's witness Jordan Infranca. Ise contends that the court did not maintain and display impartiality but improperly vouched for Infranca's credibility by wishing Infranca, a police recruit in training, good luck in the police academy and his future career as a police officer. Upon review of the record, we find that Ise did not object at trial to the comments made by the court and, therefore, his allegation of error is reviewable for plain error only. *State v. Robinson*, 90 S.W.3d 547, 555 (Mo. App. 2002).

Ise fails to make a threshold showing that plain error review is warranted. In addressing Ise's motion on this issue, the court noted that the court is customarily cordial to all witnesses, as well as attorneys, and found nothing in its statements to Infranca that improperly bolstered or supported his testimony. A review of the record confirms that the court thanked each of the witnesses at Ise's trial and was generally cordial to all parties. In light of the record, Ise fails to facially establish substantial grounds to believe that the court's comments to Infranca created a manifest injustice. We, therefore, decline to exercise our discretion and conduct a full plain error review. Point seven is denied.

**Point VIII: Instruction for Lesser Included Offense**

In Ise's eighth point on appeal, he contends that the circuit court plainly erred, to his prejudice, by failing to instruct under Count II on the lesser offense of Property Damage in the Second Degree, and by failing to instruct under Count III on the lesser included offense of assault in the third degree. Ise contends that there was evidence from which the jury could have found him guilty of the lesser offenses but not guilty of the greater offenses, specifically with regard to Count II because it was pure speculation that the damage to Braun's vehicle exceeded $750.00. Ise contends that with regard to Count III, the jury could have believed that the collision with Braun's vehicle was accidental and that Ise did not act with the purpose to injure Braun.

Ise concedes that no request for instructions on the lesser offenses were made by him at trial, but requests plain error review arguing that the court had a duty to *sua sponte* instruct the jury. We find that Ise fails to make a threshold showing that plain error review is warranted. Ise cites *State v. Derenzy*, 89 S.W.3d 472 (Mo. banc 2002), as support that a trial court was found to have committed plain error by refusing to instruct on a lesser included offense, but fails to

21

acknowledge that *Derenzy* plainly states that a request for the instruction is a prerequisite for imposing the requirement on a court. *Id.* at 474. As Ise acknowledges that he failed to request these instructions, and instructions on a lesser-included offense is not required to be given if not requested, Ise fails to facially establish substantial grounds for believing that a manifest injustice has occurred. We, therefore, decline to exercise our discretion to conduct a full plain error review. Point eight is denied.

**Point IX: Instructions on Definitions**

In his ninth point on appeal, Ise contends that the circuit court plainly erred by failing to instruct the jury regarding the definition of "knowingly" in Instructions No. 6 and No. 7, and failing to instruct the jury regarding the definitions of "purposely" and "physical injury" in Instruction No. 8.

First, we note that the court did define "physical injury" for the jury in Instruction No. 11. Ise acknowledges that he did not request such instructions at trial but requests plain error review contending that the court had a duty to *sua sponte* instruct the jury with regard to these definitions. Ise's primary argument for this contention is that these terms are statutorily defined and, therefore, are defined in ways that might differ from the use of these terms in ordinary language. This argument ignores that we found in *State v. Bozarth*, 51 S.W.3d 179, 182 (Mo. App. 1991), that "knowingly" in its commonly understood sense is consistent with the definition set forth in MAI 3d 333.00. Further, Section 562.016.2 states that "A person 'acts purposely,' or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result." As with "knowingly," this definition appears consistent with how "purposely" is commonly used and generally understood. Consequently, we find that Ise fails to facially establish substantial grounds for believing that the court's failure to

22

*sua sponte* instruct the jury with regard to the definitions of "knowingly" and "purposely" created a manifest injustice. We, therefore, decline to exercise our discretion to conduct a full plain error review. Point nine is denied.

**Point X: Sentencing**

In his tenth and final point on appeal, Ise contends that the circuit court erred, to his prejudice, by sentencing him to consecutive sentences totaling 20 years imprisonment because, by so doing, the court punished him for exercising his constitutional right to a trial. Ise contends that, on at least three separate occasions before trial, the court inquired of the parties whether there had been any plea offers and was told by the prosecutor that if Ise pled guilty he would be sentenced to only two years imprisonment concurrent with the sentence he was serving in Kansas. Ise argues that, in light of the plea offers and the evidence adduced at trial, the 20-year sentence was a violation of his rights to a jury trial and due process of law.

A court's sentencing decision is reviewed for abuse of discretion. *State v. Palmer*, 193 S.W.3d 854, 857 (Mo. App. 2006). "An abuse of discretion occurs when the trial court's action is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *Id.* at 857-58. "Section 557.036.1 provides that the sentencing court is to determine the sentence in view of 'all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant[.]'" *State v. Lindsey*, 996 S.W.2d 577, 579 (Mo. App. 1999). "It is fundamental that one convicted of a crime must not be subjected to a more severe punishment simply because he or she exercised a constitutional right." *Palmer*, 193 S.W.3d at 856 (citations omitted).

We set forth the applicable standard in *Taylor v. State*:

23

> [I]f a defendant's exercise of a constitutional right was an actual factor considered by the sentencing court in imposing sentencing, then the exercise of the right was a 'determinative factor' in sentencing, and retaliation has been demonstrated, even if other factors could have been relied on by the trial court to support the same sentence.

392 S.W.3d 477, 488 (Mo. App. 2012).

The determinative factor test is met when "words stated by or attributed to the trial court [are] directly connected [to] the imposition of enhanced sentencing with a comment about the constitutional right." *Id*. at 490. "[S]omething beyond the bare possibility that retaliation could have been a factor in sentencing must be shown." *Id*. at 488.

We find nothing within the record to suggest that the court improperly sentenced Ise. While Ise portrays the court as asking about plea offers with impatience and suggesting that the court then punished Ise more severely because he proceeded to trial rather than accept the plea offers, the record indicates otherwise. The first time a plea offer was mentioned by the court was at a hearing on Ise's motion for trial setting on April 12, 2012. After a trial date was set, the court asked Ise's counsel, "Do you have the plea offer?" The court acknowledged that Ise was planning to proceed to trial but indicated that "we need to be sure that your client acknowledges that he has received the plea offer." After the plea offer was explained by the State, the court addressed Ise and his counsel to ensure that the offer had been relayed to Ise.

The next time a plea offer was mentioned was at a hearing on May 10, 2012, wherein Ise was requesting a continuance and was waiving his prior request for a speedy disposition. Although Ise alleges that, "[a]gain, the trial court invited the prosecution to make a record with regard to plea offers," the record reflects no "invitation" but that the State broached the topic by stating that it "would like to make a record as to the offer made." When the court was finished addressing another matter it advised the State: "You may proceed on your record you want to

24

make with regard to any offers of the State." The State explained the offers and the court clarified and inquired of Ise that he understood. The court stated, "Do you understand that, Mr. Ise? If you were found guilty of what you're charged with and you received the maximum on every charge, you'd receive 20 years." There was continued discussion on the record as it appeared unclear, at that time, whether the court or a jury would sentence Ise if he were found guilty.

On August 2, 2012, the parties were again before the court on another motion for continuance by Ise. At that hearing, the State informed the court that Ise had been provided with a first amended information that would establish Ise as a persistent felony offender eligible for enhanced punishment. The prosecutor stated that, when they proceeded to trial, Ise would be facing up to 37 years imprisonment on the counts and whatever offer was made would no longer be on the table if they proceeded to trial. The State clarified that, Ise could accept the two-year offer on August 2, 2012, but thereafter it would be unavailable. The court confirmed with Ise and his counsel that the offer was understood.

Ise proceeded to trial and was convicted on all counts. Under counts one and two for property damage in the first degree, he was sentenced to four years imprisonment for each count. Under count three for assault in the second degree, he was sentenced to ten years imprisonment. Under count four, he was sentenced to one year in the county jail for misdemeanor leaving the scene of a motor vehicle accident. Under count five, he was sentenced to one year in the county jail for driving while revoked.

We find no evidence in the record that the court improperly punished Ise for exercising his constitutional right to proceed to trial and find no abuse of discretion in the sentences imposed. Point ten is denied.

25

We conclude, therefore, that the circuit court did not: 1. Err by overruling Ise's motion for judgment of acquittal because the evidence adduced at trial was sufficient to support each of Ise's convictions beyond a reasonable doubt; 2. Abuse its discretion by denying Ise's motion to dismiss based on a 911 call that Ise contends was suppressed by the State. Ise fails to show that the 911 call was materially exculpatory or even potentially useful evidence for Ise's defense and Ise had the opportunity to cross-examine the 911 caller during deposition testimony. Even if it could be considered potentially useful, Ise fails to show that it was destroyed in bad faith; 3. Abuse its discretion by denying Ise's motion in limine and admitting in evidence the recordings of telephone calls to the Platte County Dispatcher (State's Exhibit 1) because the 911 calls meet the present sense impression exception to the hearsay rule and their admission did not violate Ise's confrontation clause rights; 4. Abuse its discretion by admitting into evidence the prior testimony of Sergeant Kelley given at a probation revocation proceeding in Kansas. Ise had the opportunity to thoroughly cross-examine Kelley at the Kansas hearing on the same issue for which the testimony was admitted and for which he was on trial, or; 5. Abuse its discretion in sentencing Ise. We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

26