

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,          )
                                   )
          Respondent,     )
                                   )
v.                                  )     No. SD36171
                                   )     Filed:  July 13, 2020
RANDY HARLON RICHARDSON,   )
                                   )
          Appellant.      )

APPEAL FROM THE CIRCUIT COURT OF IRON COUNTY

Honorable Kelly W. Parker, Judge

**<u>AFFIRMED</u>**

Randy Harlon Richardson ("Richardson") appeals his conviction of one count of rape in the first degree. In one point relied on, Richardson argues the trial court erred in denying his motion to dismiss after the State failed to preserve Victim's cellphone, in that such failure constituted bad faith on behalf of the State. Finding no merit to Richardson's point, we deny the same and affirm the judgment of the trial court.

**Facts and Procedural Background**

Richardson does not challenge the sufficiency of the evidence to support his conviction. We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdict. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We recite other information as necessary for context.

On March 20, 2018, Richardson physically and sexually assaulted Victim. Victim subsequently reported the assault, and Richardson was apprehended. In an interview with law enforcement, Richardson claimed the sexual contact with Victim was consensual, and that it was demonstrated by text messages exchanged between the parties the day of, and two days prior to, the assault.

Richardson was charged, by amended information, as a persistent offender, with the unclassified felony of rape in the first degree, pursuant to section 566.030.[1]

On April 17, 2018, Richardson filed a "Motion to Preserve Evidence" requesting, in part, preservation of Victim's cellphone, and specifically any text messages or phone calls between Victim and Richardson between March 18, 2018 and March 22, 2018.

The morning of the preliminary hearing on April 19, 2018, Judge Randall Head heard argument on Richardson's motion to preserve evidence. The motion hearing was not recorded. No formal written order was entered, and no docket entry was made in CaseNet that covered the time period surrounding the hearing.[2] The recorded transcript from the preliminary hearing contained no reference to the motion to preserve evidence or the judge's oral ruling on that motion.

---

[1] All references to statutes are to RSMo Cum.Supp. 2013, unless otherwise indicated.

[2] At the preliminary hearing, Victim testified she did not remember having any interaction with Richardson outside of work, including texting or any kind of messaging, between the dates of March 17-19, 2018. Victim indicated, however, that Richardson did contact Victim through an instant message on Facebook on March 20, 2018, the day the sexual assault occurred. On cross-examination, Victim testified she had allowed Richardson to borrow her phone, at which time he placed on it an app that allowed him to send her encrypted messages through Facebook Secret

2

On September 10, 2018, Richardson filed a motion to compel the production of Victim's cellphone.

On September 21, 2018, Richardson filed a motion to dismiss alleging that Judge Head had sustained the motion to preserve evidence after the preliminary hearing. The motion alleged that Victim was present with her cellphone when the motion was sustained, and that several law enforcement officers were also present. The motion further alleged that defense counsel was later informed by the prosecutor that the Missouri State Highway Patrol ("MSHP') did not collect Victim's cellphone because "based on their training and experience, when information is sent via Facebook Messenger encrypted 'Secret Messenger' no information is retained on the device." The motion also alleged that the contents of the cellphone were essential to the defense's theory of the case (*i.e.*, that the sexual incident was consensual).

On September 24, 2018, a hearing was held on the motion to dismiss. Defense counsel advised the trial court that when she went to file her motion to dismiss, she did not see a docket entry reflecting Judge Head's ruling on the motion to preserve evidence. She contacted the clerk regarding this omission, and the clerk made a retroactive docket entry based on the judge's verbal ruling. The prosecutor noted that the recording of the preliminary hearing did not contain any ruling on the motion and that the ruling did not appear on CaseNet until September 19, 2018. However, when the trial court specifically inquired of the prosecutor, "Any doubt that Judge Head did issue that order on the day that he did the bind over? On behalf of the state?" The prosecutor replied, "[Judge Head] says he did it so he did it."

Defense counsel then proposed that if the trial court did not dismiss the case, "the only thing that I can think of and I could file a separate motion to take up pre-trial if you'd like is I

_____

Messenger. Victim stated that these messages are only retained under this app for a brief period of time before they are automatically erased.

3

would want a curative jury instruction that is mentioned in [*Arizona v.*] *Youngblood*[,] [488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)]." The trial court indicated it was familiar with that type of instruction, and observed that the remedial instruction in *Youngblood* was "very similar to the remedy that I was going to grant[,]" and further indicated it would "need to give [defense counsel] some wide latitude on the defense side to cross examine the witnesses, . . . to argue about the adverse inference to the state," and "to argue that the jury should infer from the failure to preserve the phone that the contents would be adverse to the state's position."

On September 28, 2018, the trial court held a second hearing on this issue, at which Judge Head testified under subpoena from both parties. Judge Head testified that to the best of his recollection, defense counsel's motion to preserve evidence was sustained, but he had no "memory of the order per say [sic] except as reflected in [the clerk's] notes on her docket she keeps[.]" Judge Head could not recall whether he announced the ruling in open court, but presumed he had done so in light of the clerk's docket notes.

An Iron County Sheriff's deputy testified that no one from the MSHP, which was investigating the case due to a conflict of interest, was present in the courtroom when the motion was discussed.

Victim testified that she had her cellphone with her during the preliminary hearing. She said the phone had been traded in to AT&T about three to four months after the preliminary hearing because the screen was cracked. Victim said that she still had the SIM card from that phone, brought it with her to court, and that she had been informed by the prosecutor's office that it was okay to trade in the phone.

At the conclusion of the evidence, defense counsel argued that the State acted in bad faith, a curative instruction was an insufficient remedy, and renewed her request for dismissal. In

response, the prosecutor observed that three witnesses and counsel all had multiple inconsistent recollections as to how Judge Head ruled (or if he ruled) on defense counsel's motion. The prosecutor indicated that it was "clear [] that something occurred that was outside the norm with this case[,]" and that "[t]he state accepts that Judge Head has made an order. But the state was not aware of it until 10 days ago." The State requested the opportunity to cure by obtaining records from Facebook and AT&T, and the records from Victim's SIM card.

The trial court inquired whether defense counsel would "prefer to have the messages if they can retrieve those," or for the trial court "to give that instruction?" Defense counsel responded that she would "prefer to have that instruction and go to trial on Monday[.]"

Following a conference in chambers with the attorneys, the trial court announced that it would again deny the defense's motion to dismiss. Defense counsel informed the trial court that the parties had entered into a stipulation in lieu of an instruction, and that she would get leave to cross examine witnesses on the issue.

On October 1, 2018, a jury trial commenced. Defense counsel told the jury in her opening statement that it would hear that Victim and Richardson exchanged messages, some flirtatious, and that it would hear why none of those messages were available. The stipulation, signed by counsel for both parties, was published to the jury at the conclusion of that opening statement.[3]

Victim testified that the first time she met Richardson was when she returned to work on March 17, 2018, at Stone Crest Health Care. She had been away from work while studying for

---

[3] The stipulation read as follows:

> A motion was filed by Defense Counsel in April of 2018 asking the Court to order the State to preserve the victim's phone, video surveillance from the nursing home where Randy Richardson and [Victim] worked and video of the law enforcement interview of Randy Richardson. No written record of the Judge's order approving said motion was made available to either party until September 19, 2018. The Judge stated under oath that he must have announced his order verbally in court on April 19, 2018 because the Court Clerk made an entry in her personal notes to that regard. The State did not attempt to preserve those items until after September 19, 2018.

5

her CNA exam. Richardson was very friendly, which quickly turned into a flirtatious friendly. Richardson asked to borrow Victim's phone because his was low on minutes. Richardson then told Victim that he was going to start sending her messages on Facebook Messenger. Richardson sent messages through the secret messenger function that encrypted the messages and erased them within sixty seconds after being sent—these were sent from multiple accounts, including his wife's. Victim initially responded to some of the messages, but never sent Richardson any messages outside of work hours. Victim denied ever flirting or having a consensual "affair" with Richardson.

Victim stated she was an avid poster to Facebook, sometimes posting up to 25 times a day. She identified several posts she made or shared to Facebook from her phone during the March 17 through March 22 time period. Some of those texts included lines from songs and some were selfies. These texts were admitted into evidence. Victim explained in detail the content of each text and denied they were directed to Richardson personally.

Victim admitted to being present at the preliminary hearing where the trial court received argument regarding the preservation of her cellphone. Victim understood that defense counsel wanted her cellphone, but she "knew that the judge said that you [defense counsel] were not getting it. You could subpoena records." Victim stated she offered to "give up" her cellphone, but after hearing the judge's ruling, she "knew that [her] phone did not need to be turned over, the records would be subpoenaed." Victim testified that approximately four months later, she called the prosecutor's office and asked if she could trade in her cellphone because it was cracked and was given the okay. In the course of the investigation, Victim was told by law enforcement that they did not need her phone.[4]

---

[4] Victim delivered copies of "screen shots" from her cellphone to the prosecutor. These were not from the Facebook Secret Messenger as those were encrypted and automatically deleted.

6

Corporal Christopher Hamlett ("Corporal Hamlett"), a criminal investigator with the MSHP, testified that in Richardson's interview, he claimed that he and Victim exchanged messages on Facebook Secret Messenger and ultimately developed a relationship that included a consensual sexual encounter. Richardson also admitted to using methamphetamine the morning of the sexual assault. Corporal Hamlett collected Richardson's cellphone and the passwords for his social media accounts. A warrant was issued for Richardson's Facebook accounts, which showed no messages exchanged between Richardson and Victim. Officer Hamlett explained that messages sent through the "secret or encrypted Facebook Messenger" are deleted and are not easily retrieved by law enforcement and are usually not provided by Facebook. Corporal Hamlett indicated that he was unaware of any court order to preserve Victim's cellphone as he was not present at any hearing. He testified that if he had known, Victim's cellphone would have been preserved. Corporal Hamlett indicated he believed that records from Facebook would be the best indicator of whether any messages were exchanged between Victim and Richardson.

Richardson did not testify, but presented testimony from co-workers that Victim had pursued a relationship with Richardson, and that Victim reported the rape after Richardson had complained to his employer that Victim was harassing him at work.

Defense counsel argued in closing argument that Victim had consensual sex with Richardson, and that Victim used Facebook Secret Messenger to talk to Richardson so her fiancé would not find out. Defense counsel argued that the State was trying to hide evidence that would exonerate Richardson.[5]

---

[5] Specifically, defense counsel made the following argument:

That's why you need secret messages. And I'd love to show you those messages today but I can't. I don't have them and there's a reason I don't have them. The State did not want me to have them. He did not want [Richardson] to have them for his defense. They didn't want any independent confirmation of the affair between [Victim] and [Richardson]. Look at this stipulation you were given yesterday. I filed a motion with the court and I said I want [Victim]'s phone. I want it preserved and I want to get those messages off of it. A judge ordered that. A judge ordered her

The jury found Richardson guilty on the sole count of rape in the first degree.[6]  The trial court sentenced Richardson, as a prior and persistent offender, to twenty-five years in the Department of Corrections.  This appeal followed.

In his sole point relied on, Richardson argues:

> The trial court erred in denying Mr. Richardson's motion to dismiss because . . . after the trial court ordered the state to preserve [Victim]'s cell phone because it contained potentially useful exculpatory or impeaching evidence, the state knowingly allowed for the destruction of the cell phone, and the knowing destruction of evidence after a trial court orders a state to preserve it constitutes bad faith.

## Standard of Review

"A trial court's ruling on a motion to dismiss a charging instrument is reviewed for an abuse of discretion." *State v. Erby*, 497 S.W.3d 291, 295 (Mo.App. S.D. 2016).  "An abuse of discretion occurs when the trial court's action is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *State v. Russell*, 598 S.W.3d 133, 136 (Mo. banc 2020) (internal quotation and citation omitted).

The standard governing due process claims for access to evidence depends on the nature of the evidence the State has destroyed.

> When the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant:  a due process violation occurs whenever such evidence is withheld.

---

phone preserved so we could look at it and you could see those messages.  She testified I had the phone in court.  I had it in court.  Did it get preserved?  No you didn't get to see it.  She got rid of it.  He did, that's not helpful to him.  [Richardson]'s phone it would have had messages on it, it would have had those secret Facebook messages.  [Richardson] even says in his audio I deleted that app, I didn't want to talk to her anymore but if you reload it all those messages will be on there backed up by Google Play.  Highway Patrol in the audio, listen to them, [Richardson] you know there's things on that phone even if they are deleted we can get?  Oh yes they can.  Did they?  No they did not.  They never dumped his phone, they never opened it, they never looked at it.  They have it.  They've had it since March 22nd and there's absolutely nothing that I've been able to present to you off of that phone because the State has it and the State doesn't want to get anything off of it.  I think [Corporal] Hamlett said it the best, we didn't talk to any other witnesses because we didn't want to muddy the waters.  Sure they didn't.  They have a deputy whose fiancé's saying that she's been raped. . . . They didn't want to muddy the waters by giving you the evidence.

[6] A lesser-included instruction was given for the crime of rape in the second degree.

8

> In *Youngblood*, by contrast, we recognized that the Due Process Clause 'requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.' [*Youngblood*, 488 U.S. at 57, 109 S.Ct. at 337]. We concluded that the failure to preserve this 'potentially useful evidence' does not violate due process '*unless a criminal defendant can show bad faith on the part of the police.*' *Id.*, at 58 109 S.Ct. 333 (emphasis added).

*Illinois v. Fisher*, 540 U.S. 544, 547–48 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (other citations omitted).

> For evidence to qualify as 'materially exculpatory,' 'the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' *California v. Trombetta*, 467 U.S. 479, 489 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). If the evidence fails to meet this two-pronged test, then the evidence is, at most, only 'potentially useful,' and a showing of bad faith is necessary to substantiate a due process claim based on the State's destruction of the evidence. *Fisher*, 540 U.S. at 548, 124 S.Ct. 1200.

[*State v.*] *Cox*, 328 S.W.3d [358, 362 (Mo.App. W.D. 2010)]. Our Supreme Court has stated: 'absent a showing of bad faith on the part of the police or prosecutor, the failure to preserve even potentially useful evidence does not constitute a denial of due process.' *State v. Ferguson*, 20 S.W.3d 485, 504 (Mo. banc 2000). Bad faith means the evidence was destroyed 'for the purpose of depriving the defendant of exculpatory evidence.' *Cox*, 328 S.W.3d at 364–65 (internal quotations and citations omitted). As the proponent of the motion to dismiss, Defendant had the burden to show the destroyed evidence was materially exculpatory or potentially useful and, if merely potentially useful, destroyed in bad faith. *See generally* [*State v.*] *Berwald*, 186 S.W.3d [349, 366–67 (Mo.App. W.D. 2005)] (placing burden of proof on the defendant); *State v. Ise*, 460 S.W.3d 448, 457–58 (Mo.App.W.D.2015) (same).

*Erby*, 497 S.W.3d at 295–96.

## Analysis

Richardson claims that the trial court abused its discretion in denying his motion to dismiss pursuant to the State's alleged bad-faith destruction of Victim's cellphone.

In the record before us, Richardson fails to demonstrate abuse of discretion by the trial court based on the particular facts and circumstances of this case. The trial court heard numerous

and extensive arguments on this issue over the course of several hearings, at which multiple witnesses were called. Moreover, when the trial court asked defense counsel whether she would accept the State's offer to cure (*i.e.*, whereby they would obtain and deliver records from Facebook, AT&T, and Victim's SIM card), or whether defense counsel would rather utilize the instruction or the stipulation and be ready to proceed to trial, she chose the latter option. The trial court's remedy demonstrates its weighing of the particular and unique factors at play in this case: (1) a joint stipulation, signed by counsel for both parties, was published to the jury at the end of opening statements and informed them of the relevant circumstances; and (2) the trial court gave defense counsel wide latitude (forcefully exercised by defense counsel) in cross examination, and in closing arguments, for purposes of suggesting the negative available inferences from the State's failure to preserve Victim's cellphone.

Based on the particular facts and circumstances in this case, Richardson fails to demonstrate that the trial court abused its discretion in denying his motion to dismiss the charge against him. *See Erby*, 497 S.W.3d at 295. Richardson's point is accordingly denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS